537 A.2d 393

John M. Young, Petitioner *v.* Workmen's Compensation Appeal Board (Weis Markets, Inc.), Respondents.

534

Argued November 17, 1987, before President Judge CRUMLISH, JR., and Judge BARRY, and Senior Judge BARBIERI, sitting as a panel of three.

*Michael P. Shay, Shay & Santee,* for petitioner.

*Wilbur C. Creveling, Jr., Creveling & Creveling,* for respondents.

OPINION BY SENIOR JUDGE BARBIERI, February 19, 1988:

This is a petition for review filed by John M. Young (Claimant) from an order of the Workmen's Compensation Appeal Board (Board) which granted Weis Markets,

Inc.'s (Employer) petition for modification of benefits from total disability to partial disability. We reverse the order of the Board and reinstate the award of total disability.

Claimant suffered a work related back injury on February 7, 1975, when he slipped on a piece of fat while carrying a tray of meat. The fall tore loose adhesions in his lower back which had formed as the result of two prior back operations relating to work injuries and necessitated Claimant's treating physician having to lyse the adhesions as well as remove a third disc. Pursuant to a notice of compensation payable, Claimant has been receiving compensation for total disability in the amount of $171.00 per week since July 1, 1975. In April of 1975, five days after Claimant was released from the hospital, he slipped and fell in a drugstore again tearing loose the adhesions from the prior three operations. A settlement was reached against the drugstore in the amount of $85,000.00 against which Employer received subrogation and credits. Claimant's pain persisted and he developed tarsal tunnel syndrome and numbness in his left foot. From 1976 to 1977, he underwent five surgical procedures performed on his back including multiple rhizotomies and one on his left foot and ankle. These operations produced only temporary results and Claimant's treating physicians prescribed narcotics to ease the pain. Claimant initially was prescribed Codeine which quickly escalated to Percodan. Claimant took twenty-four tablets of Percodan per day for two years and became addicted to Percodan. In December 1979, Claimant's treating physician began prescribing Methadone. Claimant takes three to ten five milligram tablets of Methadone per day and is now a Methadone addict. Claimant is also under psychiatric care and receiving Librium.

Claimant was examined by Employer's physician on May 28, 1980, and July 19, 1982. Following the first examination, on May 30, 1980, Employer filed a petition for termination asserting all disability had ceased, which the referee elected to treat as a petition for modification to partial disability. Employer's physician testified that with an orothotic brace or support for his left foot Claimant was fully cleared to return to work even with his addiction and could perform jobs involving lifting up to fifty pounds. Employer also presented the testimony of a vocational counselor who described five job openings existing during the week of January 5, 1981, and a further eleven jobs allegedly available between March 11, 1981, and April 10, 1981. Employer's physician certified that Claimant could perform fifteen of these positions.

Under the guidelines recently set forth by our Supreme Court in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987) and *Farkaly v. Workmen's Compensation Appeal Board (Baltimore Life Insurance Company)*, 516 Pa. 256, 532 A.2d 382 (1987), an employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition permitting re-employment followed by evidence of a referral to a then open job which fits in the occupational category for which the claimant has been given medical clearance. The claimant may then by medical evidence rebut employer's evidence of such a change in condition, indicate the unacceptability of the offered employment, or demonstrate that he has in good faith followed through on the referral. *See Roadway Express, Inc. v. Workmen's Compensation Appeal Board (Lewis)*, 113 Pa. Commonwealth Ct. 230, 536 A.2d 870 (1988).

In the present case, Claimant offered medical evidence to rebut Employer's evidence as to change in medical condition. Several of Claimant's treating physicians testified that Claimant was almost completely disabled as a result of degenerative disc disease in the lumbar spine upon which has been superimposed surgery with extensive laminectomy and perineural scarring, that Claimant could hardly get up on the examining table or walk without a cane, and that Claimant was addicted to Methadone. Claimant's treating physician stated that Claimant may be able to perform part-time sedentary work with no lifting above ten pounds. Claimant testified that he had not worked since February 7, 1975, but in 1981 he did perform duties for his church assigning bus drivers to a school transportation program for which he was allowed to live in a church owned home rent-free. Claimant was subsequently asked to discontinue this activity by the church.

The referee chose to accept certain of the testimony of Employer's physician[1] and reduced Claimant's benefits to partial disability in the amount of $89.14 per week on the basis he was convinced the Claimant was capable of performing the jobs to which Employer's vocational counselor testified. The Board affirmed. Claimant argues that the Board's conclusion that

---

[1] Employer's physician expressed several different opinions with regard to Claimant's Methadone addiction. Initially, he stated that with a foot brace Claimant could return to the job he held prior to his injury (R.R. 19a). Under cross-examination he testified that Claimant would have to clear up his addiction before he could return to his previous occupation or perform the jobs described by Employer's vocational counselor or any other type jobs (R.R. 40-41a). Finally, when asked on redirect examination whether Claimant with a foot brace and in his present state concerning the use of Codeine and Methadone could perform the jobs listed by the vocational counselor, Employer's physician replied "sure he could do them." (R.R. 48a)

Claimant's total disability has abated is unsupported by substantial evidence. We are well aware of cases that the referee is the ultimate finder of fact and may decide between conflicting testimony, accepting or rejecting the testimony of any witness in whole or in part. *Ruhl v. Workmen's Compensation Appeal Board (Erie County Geriatric Center)*, 102 Pa. Commonwealth Ct. 374, 518 A.2d 345 (1986); *Smith v. Workmen's Compensation Appeal Board (Westinghouse Electric Corp.)*, 90 Pa. Commonwealth Ct. 246, 494 A.2d 877 (1985).

The employer must next show that he referred the claimant to a job within the category for which the claimant received medical clearance. *Farkaly* at 259, 532 A.2d at 383. As part of this requirement the employer must prove the job referral is "actually available" to the claimant. *Kachinski* at 249, 532 A.2d at 379. Employer's vocational counselor must procure referrals that are actually available and bring these referrals to the attention of the Claimant or his counsel. *Farkaly* at 261, 532 A.2d at 383.

Employer's vocational counselor testified that she got the names of her job referrals from the want ads. None of these jobs paid more than $4.00 per hour, most of them paid minimum wage. The vocational counselor would then call these employers and tell them she was attempting to locate employment for someone with a foot problem who could not do extensive walking, could not stand all day, or do heavy lifting (R.R. 77a). She would then ascertain the physical characteristics of the job from the prospective employer and determine if the job was suitable based on the restrictions given to her by Employer's physician. She did not tell any of the employers that Claimant was a Methadone addict (R.R. 78-79a). She did not tell any of the employers that Claimant had undergone at least seven back operations in three years and had not worked in six years (R.R. 75-77a). She did not discuss any of the previous injuries

that Claimant had suffered or even give Claimant's age. Most importantly, none of the employers indicated they would accept an application from Claimant (R.R. 70-71a). Summarized descriptions of the jobs were then sent to Claimant's counsel.

This Court has held that a job is not actually available unless there is evidence that the employer named was willing to accept the claimant as an employee with his current physical limitations. *King Fifth Wheel Co. v. Workmen's Compensation Appeal Board (Rhodes)*, 79 Pa. Commonwealth Ct. 300, 468 A.2d 1211 (1983). As Employer's vocational counselor chose not to discuss Claimant's physical limitations with the prospective employers, the jobs were not available. The information that Employer's vocational counselor did give to the prospective employers, namely the restrictions stated by Employer's physician, did not give an accurate picture of the proposed employee. There is no evidence to believe that any of these prospective employers would hire a forty-six year old Methadone addict who had suffered through seven major back operations, could not walk without a foot brace and cane, and had not worked in seven years to fill a minimum wage, menial job.[2] Even though Employer's vocational counselor did not disclose this information, none of the prospective employers said they would accept an application from Claimant. Employer's job referral efforts fall far short of meeting the good faith requirements laid down by the Supreme

---

[2] For example, Claimant was referred a job as a hall monitor in a high school. We seriously doubt a school district would hire a Methadone addict to supervise its boys' lavatories. Claimant was also referred a job as a night security guard making the rounds of a two acre truckyard. The prospective employer's reaction to the knowledge that Claimant had trouble walking, was prone to slips and falls, and the last time he had fallen had recovered $85,000 from the store in question is not difficult to imagine.

Court in *Kachinski*. Employer's vocational "expert" in fact does nothing more than look up minimum wage jobs advertised in the want ads and place a phone call.[3] If the employer is unwilling to even take an application from a claimant in response to the vocational expert's inquiries, the claimant has received nothing more than an opportunity to walk off the street and apply for a want ad job in the same manner as any member of the general public. This is not a job *referral*. "One injured at work, stranded into partial disability, deserves more than a generic list describing where he might find some suitable work." *Kachinski* at 253, 532 A.2d at 380.

In light of the admittedly crippled condition of the Claimant here and the clearly insufficient proof of job availability on the part of Employer, much less a job "tailored to the claimant's abilities," as required by *Kachinski*, we must conclude that Employer here has fallen far short of the good faith requirement of making a job available to this Claimant. As stated in *Kings Fifth Wheel* at 303, 468 A.2d at 1212, a job open is not necessarily a job available. This is simply an attempt to avoid paying compensation rather than a good faith attempt to return the employee to productive employment. *Kachinski* at 252, 532 A.2d at 380. The order of the Board is reversed, the total disability award of $171.00 per week, dated July 11, 1979, is reinstated, and the case is remanded for computation of compensation due Claimant in light of our decision.

---

[3] We do not reach the issue of whether or not the information that Employer's vocational counselor receives over the phone from a prospective employer and testifies to is inadmissible hearsay. We do note that a claimant has no way of verifying the availability and suitability of the jobs described short of actually applying for every job sent to him.

ORDER

Now, February 19, 1988, the order of the Workmen's Compensation Appeal Board at No. A-90259, dated June 12, 1985, is hereby reversed, the award of total disability dated July 11, 1979, is reinstated, and the case is remanded to the Board for computation of compensation due Claimant.

Jurisdiction relinquished.