616 A.2d 121

**Charles P. BROWN, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (COOPER JARRETT, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 1, 1992.

Decided Sept. 24, 1992.

Petition for Allowance of Appeal
Denied Jan. 27, 1993.

Thomas F. McDevitt, for petitioner.

Stephen J. Harlen, for respondent.

Before McGINLEY and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

McGINLEY, Judge.

Charles P. Brown (Claimant) petitions for review of an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's decision that modified Claimant's

temporary total disability benefits of $262.00 per week to partial disability benefits in the amount of $250.67 per week. We reverse.

Claimant was employed as a platform worker by Cooper Garrett, Inc. (Employer) when, on December 31, 1981, he sustained an injury to his left leg, which led to surgical complications resulting in injuries in the nature of phlebitis and reflex sympathetic dystrophy. Claimant filed a claim petition and, after litigation, was awarded total disability benefits in the amount of $262.00 per week based on an average weekly wage of $576.00. In June of 1987, Employer filed a termination petition alleging that Claimant's disability had ceased and that he was able to return to work without loss of earnings or earning power. The referee granted a supersedeas for partial disability based upon earning power in the amount of $134.00 thereby bringing Claimant's loss of earnings down to $442.00 per week.

During the referee's hearing on Employer's termination petition Employer presented the deposition testimony of Richard I. Katz, M.D. (Dr. Katz), a physician board-certified in neurology. Dr. Katz examined Claimant and found no objective neurologic findings, no evidence of causalgia, reflex sympathetic dystrophy, phlebitis or any other organic reason why Claimant is unable to return to his platform worker position. Consequently, Dr. Katz opined, based upon a reasonable degree of medical certainty, that Claimant is able to return to his platform worker job without limitation.

Employer also presented the deposition testimony of Thomas L. Yohe (Mr. Yohe), a rehabilitation counselor. Mr. Yohe testified that he looked for sedentary jobs for Claimant within the restrictions as set forth by Dr. Edward B. Polin, M.D. (Dr. Polin), Claimant's treating physician and a specialist in internal medicine. Mr. Yohe provided Claimant and his attorney with six available positions. Dr. Katz, Employer's doctor, approved all six positions. Dr. Polin approved four of the positions, but did not approve an assembler position at Tri-Con or a factory help position at A & B Wiper.

Claimant testified on his own behalf and introduced the deposition testimony of Dr. Polin and Napoleon N. Vaughn (Dr. Vaughn), a licensed psychologist. Dr. Polin diagnosed Claimant as suffering from post-phlebitic syndrome in his left leg and continuing pain known as reflex sympathetic dystrophy or causalgia. Dr. Polin opined that Claimant could not resume his former employment. Dr. Vaughn also examined Claimant and opined that, although he is intelligent and showed no pathological signs, he could not return to work.

The referee accepted the testimony of Dr. Katz and Mr. Yohe and found that Claimant is only partially disabled and is capable of performing light and sedentary work. The referee further found that Claimant could perform a sedentary job with Strawbridge & Clothier, which would pay him wages of $200.00 a week as of March 3, 1989. The referee was not persuaded by the testimony that Claimant is totally disabled and unable to perform gainful employment of any kind. As a result, the referee reduced Claimant's benefits from temporary total disability to partial disability benefits in the amount of $250.67 effective March 3, 1989. The Board affirmed and Claimant appeals.

Claimant contends that the referee's finding that Claimant's disability is partial was not supported by medical evidence, and that Employer did not meet its burden of establishing the availability of alternative employment, because its vocational expert did not inform prospective employers of the extent of Claimant's disabling condition. Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law was committed or whether the necessary findings of fact are supported by substantial evidence. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988).

■ Claimant's first contention is that the referee's conclusion that Employer met its burden of proving a change in Claimant's condition such that Claimant is capable of returning to sedentary employment is not supported by substantial evidence because Employer presented no evidence that

Claimant's medical condition improved. The referee found Dr. Katz's testimony to be persuasive to the extent of concluding that Claimant is only partially disabled and that Claimant was capable of performing a job with Strawbridge and Clothier that paid $200.00 per week beginning March 3, 1989. Finding of Fact (F.F.) No. 20(b); Reproduced Record (R.R.) at 226a.

Dr. Katz testified that he found no signs of autonomic dysfunction of the nervous system that would indicate pain syndromes such as causalgia or reflex sympathetic dystrophy. F.F. No. 5(b); R.R. at 223a. Dr. Katz also found no x-ray evidence of bony absorption that would indicate causalgia or reflex sympathetic dystrophy. F.F. No. 5(d); R.R. at 223a. Consequently, Dr. Katz opined that Claimant no longer suffers from causalgia or reflex sympathetic dystrophy. F.F. No. 6; R.R. at 223a. Dr. Katz also found no evidence of phlebitis in Claimant's lower legs or any other organic reason why Claimant cannot return to work. *Id.* These findings are supported by Dr. Katz's testimony. *See* R.R. at 10a–19a. Accordingly, we conclude that the Dr. Katz's testimony is sufficient to support a finding that Claimant no longer suffers from reflex sympathetic dystrophy or phlebitis.

In *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), the Supreme Court established guidelines for an employer seeking to modify a claimant's benefits based on the claimant's ability to return to work. The employer must first produce medical evidence of a change in the claimant's condition and then produce evidence of a referral to a then-open job that fits in the occupational category for which the claimant has been given clearance, *e.g.*, sedentary work. *Id.* at 252, 532 A.2d at 380. The claimant must then demonstrate that he has in good faith followed through on the job referral. *Id.*

Having concluded that Employer produced sufficient evidence of a change in Claimant's condition, we now address Claimant's contention that Employer did not meet its burden of proving that alternative employment was available. Claim-

ant contends that Mr. Yohe did not reveal to any prospective employers (1) that when Claimant sits, he must keep his leg extended 90% of the time; (2) that Claimant's leg bothers him in bad weather; (3) that Claimant also suffers from back pain because of a degenerative disc disease; (4) that Claimant can walk only short distances; and (5) that Claimant's entire leg swells and becomes discolored at his foot.

In *Young v. Workmen's Compensation Appeal Board (Weis Markets, Inc.)*, 113 Pa.Commonwealth Ct. 533, 537 A.2d 393 (1988), we interpreted the second prong of the *Kachinski* test to require an employer to prove that a job was "actually available" to the claimant by demonstrating that a prospective employer was willing to accept the claimant as an employee with his all current physical limitations. *Id.* at 539, 537 A.2d at 396.

In the present case, Mr. Yohe testified as follows:

Q.  Now, when you spoke to these various people about Mr. Brown, what did you tell them?

A.  I told them that we were dealing with a gentleman who needed a sit-down job.  He was in his late 50's, who had a tenth-grade education and that we were looking for jobs that did not require skills of that sort and that would allow him to sit for a majority of the time.

Q.  Did you tell him that he was disabled?

A.  Yes.

Q.  What disability did you relate about Mr. Brown?

A.  That he had a problem with his leg that had been diagnosed seriously as rumbo phlebitis or some sort of other nerve-type problem with the leg, that he could not walk or stand on it continuously for any length of time.

Q.  Did you tell him how the leg was extended when he sat?

A.  No, I did not.

Q.  Were you aware of that or not?

A.  I think I had read that in his—

Q.  In his testimony?

A.  —testimony, but the doctors didn't seem to put much weight to that.

Q. Well, don't you think that would be pertinent to tell anybody that was going to hire him, that you were going to some of your old contacts and trying to place somebody? Don't you think that would be pertinent?

A. If that were required, it could be pertinent, yes.

Q. Did you tell anybody that Mr. Brown had testified that when the leg bothered him or if it's bad weather, he didn't go out of the house?

A. No, I didn't.

Q. Did you tell anybody that he had back pains?

A. No, I didn't.

Q. Did you tell anyone he could walk about two or three squares?

A. Yes. He—well, I mentioned that he was not to walk any excessive distances or any length of time, more than a block or so.

Q. Did you tell anyone that 90 percent of the time when he's sitting, he has the left leg fully extended?

A. No, I did not.

Q. Do you remember reading that in his testimony?

A. Yes—actually, I'm not sure if I remember it as much as noting your reference to it.

Q. Did you tell anyone that his whole leg would swells [sic] and gets discolored down at the foot?

A. No. I didn't go into that detail.

R.R. at 122a–124a.

In light of the foregoing testimony, it is evident that Mr. Yohe only informed prospective employer's about Claimant's inability to walk greater distances than approximately one block. This testimony also indicates that Mr. Yohe was aware of other limitations on Claimant, such as his inability to sit without his leg extended, his inability to work in bad weather, his inability to work without his leg's swelling and his experiencing back problems. Although Mr. Yohe admits that Claimant's inability to sit without extending his leg may be "pertinent" information for a prospective employer, he did not inform any of them of this or the other limitations. In

accordance with *Young*, we must conclude that Mr. Yohe did not present a sufficiently accurate picture of Claimant to the prospective employers and find that these four positions, including the Strawbridge & Clothier job, were not actually available to Claimant.

Accordingly, we reverse the order of the Board.

## ORDER

AND NOW, this 24th day of September, 1992, the order of the Workmen's Compensation Appeal Board in the above-captioned proceeding is reversed and Claimant's total disability benefits are reinstated.

SILVESTRI, Senior Judge, dissenting.

I agree with the majority's recitation of the procedure and facts of the case, but because I disagree with the result, I dissent.

The majority relies on *Young v. Workmen's Compensation Appeal Board (Weis Markets, Inc.)*, 113 Pa.Commonwealth Ct. 533, 537 A.2d 393 (1988) in reversing the Board's decision affirming the order of the referee granting the Employer's petition for modification of benefits. In *Young*, this Court stated:

> The employer must next show that he referred the claim-ant to a job within the category for which the claimant received medical clearance. *Farkaly [v. Workmen's Compensation Appeal Board (Baltimore Life Insurance Company)* ] 516 Pa. [240] at 259, 532 A.2d [374] at 383 [1987]. As part of this requirement the employer must prove the job referral is "actually available" to the claimant. *Kachinski*, 516 Pa. at 250, 532 A.2d at 379. Employer's vocational counselor must procure referrals that are actually available and bring these referrals to the attention of the Claimant or his counsel. *Farkaly*, 516 Pa. at 259, 532 A.2d at 383.
>
> Employer's vocational counselor testified that she got the names of her job referrals from the want ads. None of these jobs paid more than $4.00 per hour, most of them paid

minimum wage. The vocational counselor would then call these employers and tell them she was attempting to locate employment for someone with a foot problem who could not do extensive walking, could not stand all day, or do heavy lifting. (R.R. 77a). She would then ascertain the physical characteristics of the job from the prospective employer and determine if the job was suitable based on the restrictions given to her by Employer's physician. She did not tell any of the employers that Claimant was a Methadone addict. (R.R. 78–79a). She did not tell any of the employers that Claimant had undergone at least seven back operations in three years and had not worked in six years. (R.R. 75–77a). She did not discuss any of the previous injuries that Claimant had suffered or even give Claimant's age. Most importantly, none of the employers indicated they would accept an application from Claimant. (R.R. 70–71a)

This court has held that a job is not actually available unless there is evidence that the employer named was willing to accept the claimant as an employee with his current physical limitations. *King Fifth Wheel Co. v. Workmen's Compensation Appeal Board (Rhodes)*, 79 Pa.Commonwealth Ct. 300, 468 A.2d 1211 (1983). As Employer's vocational counselor chose not to discuss Claimant's physical limitations with the prospective employers, the jobs were not available.... 113 Pa.Commonwealth Court at 537, 539, 537 A.2d at 395, 396

*Young* cites *King Fifth Wheel, Co. v. Workmen's Compensation Appeal Board (Rhodes)*, 79 Pa.Commonwealth Ct. 300, 468 A.2d 1211 (1983). *King Fifth Wheel* was decided by this Court prior to *Kachinski v. Workmen's Compensation Appeal Board (Vepco)*, 516 Pa. 240, 532 A.2d 374 (1987) and *Farkaly v. Workmen's Compensation Appeal Board (Baltimore Life Insurance Company)*, 516 Pa. 256, 532 A.2d 382 (1987) [1] and it held, *inter alia*, that there was "no evidence that the employer would hire a person who was severely disabled as is the

1. *Kachinski* and *Farkaly* were argued the same day, decided the same day, and authored by Justice McDermott.

Claimant; . . ." 79 Pa.Commonwealth Ct. at 305, 468 A.2d at 1213.

The majority, citing *Young*, writes at page 619 of its opinion:

> [W]e interpreted the second prong of the Kachinski test to require an employer to prove that a job was "actually available" to the claimant by demonstrating that a prospective employer was willing to accept the claimant as an employee with all his current limitations.

The majority, after setting forth the testimony relating to Claimant's numerous disabilities, of which some were not related to prospective employers, concludes "that Mr. Yohe did not present a sufficiently accurate picture of Claimant to the prospective employer and find that these four positions, including the Strawbridge & Clothier job, were not actually available to Claimant."

In *Kachinski*, the Supreme Court began its opinion by stating:

> Allocatur was granted in this case to examine the degree to which an employer must prove the availability of suitable employment for a disabled claimant before a modification of benefits may be effected. 516 Pa. at 243, 532 A.2d at 375.

The Supreme Court, after reviewing the relevant factual and procedural aspects of the case, stated the issue to be as follows:

> The narrow issue presented to us is whether the evidence in this case was sufficient to sustain the employer's burden to show available work prior to effecting a reduction in benefits. However, this issue bespeaks a larger issue, which is whether an employer can sustain his burden of showing available work by demonstrating the existence of jobs in the marketplace, as opposed to demonstrating jobs which have actually been made available to the claimant. (Footnote omitted.) 516 Pa. at 244, 532 A.2d at 376.

The Supreme Court, after an analysis of federal court cases construing the Social Security Act, and cases decided by it under the Worker's Compensation Act, and cases decided by

this Court following its opinion in *Barrett v. Otis Elevator,* 431 Pa. 446, 246 A.2d 668 (1968), next observed:

> Since *Barrett,* the bulk of the interpretative work in this area has been done by the Commonwealth Court. In reviewing those decisions there seem to be two streams of thought which have evolved. The first applies an analysis akin to that applied in Social Security cases. For instance, in *Halloran v. Workmen's Compensation Appeal Board,* 49 Pa.Cmwlth.Ct. 144, 410 A.2d 420 (1980), the court accepted as sufficient the employer's evidence that certain jobs were available despite the fact that the availability of these jobs was never conveyed to the claimant. The court imposed on the claimant the burden of showing "that such jobs were not in fact available, that he was not qualified in other respects for the employment, or that he was physically unable to perform the work." Id. at 146–47, 410 A.2d at 421. See also *Matrunics v. Ruffsdale Coal Co.,* 6 Pa.Cmwlth. 420, 295 A.2d 629 (1972).

> On the other hand, there are cases which indicate that an employer must go further than merely presenting evidence of jobs which a claimant is physically capable of filling. For instance, in *Schafer v. Workmen's Compensation Appeal Board,* 93 Pa.Cmwlth. 458, 501 A.2d 708 (1985), and in *St. Joseph Hospital v. Workmen's Compensation Appeal Board,* 52 Pa.Cmwlth. 265, 415 A.2d 957 (1980), the Commonwealth Court refused to terminate compensation for claimants who were capable of performing available work for which they had applied but were not hired. See also *Jessop Steel Company v. Workmen's Compensation Appeal Board,* 10 Pa.Cmwlth. 186, 309 A.2d 86 (1973).

> The second approach seems to have culminated in the decision of the Commonwealth Court in this case, wherein the court explicitly stated that "available" means *actually* available, and that as a threshold requirement the existence of available work must be brought to the attention of the employee by the employer. (Emphasis in original.) 516 Pa. at 249, 532 A.2d at 378.

The Supreme Court, although adopting this Court's interpretation of "available" work to require a showing of "actual availability," disagreed with our "hypertechnical analysis of the individual jobs at issue" in *Kachinski* when it was before us.[2] The Supreme Court noted our explanation of what we meant by "actually available"[3] and then stated:

> This definition is consistent with prior statements by this Court. See *Unora v. Glen Alden Coal Co.*, supra, 377 Pa. [7] at 13, 104 A.2d [104] at 107. However, in applying this definition to the facts of this case the court went beyond its terms and basically imposed on the employer the duty to specify every aspect of every job in question: a cumbersome burden which seems unreasonable in light of the fact that only so much can be known about a job in advance. It is enough that the employer produce medical evidence describing the claimant's capabilities, and vocational evidence classifying the job, *e.g.*, whether it is light work, sedentary work, etc., along with a basic description of the job in question. From such evidence it will be up to the referee to determine whether the claimant can perform the job in question. See generally, Dissenting Opinion, Doyle J. *Kachinski*, supra, 91 Pa.Cmwlth. at 550, 498 A.2d at 40. Thereafter, the decision of the referee will be reviewable as a finding of fact. 516 Pa. at 251, 532 A.2d at 379.

With the foregoing as prologue the Supreme Court then set forth the four criteria being the "procedure as governing the return to work of injured employees," of which only the second is herein relevant, and provides as follows:

> 2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the

---

**2.** *Kachinski v. Workmen's Compensation Appeal Board*, 91 Pa.Commonwealth Ct. 543, 498 A.2d 36 (1985).

**3.** In *Kachinski v. Workmen's Compensation Appeal Board*, 91 Pa. Cmwlth. 543, 546, 498 A.2d 36, 38–39 (1985), we explained "actually available" as follows:

> [A] position may be found to be actually, or within the claimant's reach, only if it can be performed by the claimant, having regard to his physical restrictions and limitations, his age, his intellectual capacity, his education, his previous work experience, and other relevant considerations, such as his place of residence.

occupational category for which the claimant has been given medical clearance, *e.g.,* light work, sedentary work, etc. *Kachinski,* 516 Pa. at 252, 532 A.2d at 380.

In *Farkaly,* the claimant was a debit agent for Baltimore Life Insurance Company, a job which involved visiting clients for purposes of collecting insurance premiums. In the *Farkaly* opinion, the Supreme Court stated:

Since her job involved extensive driving and some lifting she was ultimately unable to continue in that employment.

The original injury to claimant occurred in August, 1978. She received compensation for this injury up until October, 1978, at which time she returned to work. In March, 1980, she filed a petition for reinstatement of benefits, alleging a recurrence of the symptoms from her original injury. In June, 1980, an interim order was signed awarding benefits. In May, 1981, employer filed a petition for modification, alleging that claimant's disability had ceased or changed from total to partial, and that work was available which claimant was capable of performing.

After a number of hearings the referee concluded, *inter alia,* that payment of compensation should be reinstated, and that the amount of payments should be modified from total disability to partial disability because of the availability of suitable work: a decision which was affirmed by the Board. 516 Pa. at 258, 532 A.2d at 382–83.

We reversed the Board.[4] In reversing this Court, the Supreme Court said:

The issue in this case is the same as that presented in *Kachinski v. Workmen's Compensation Appeal Board,* 516 Pa. 240, 532 A.2d 374 (1987): whether the employer has shown the availability of suitable employment such that claimant's benefits can be reduced from total to partial.

In *Kachinski* we held that a disabled claimant is entitled to a job referral to a position which the evidence proves was within his capabilities; and that the refusal of the claimant

4. 91 Pa.Commonwealth Ct. 571, 498 A.2d 34 (1985).

to pursue valid job referrals can be a basis for reducing benefits.

.    .    .    .    .

The only remaining question is whether the available work was within her capabilities. In considering this question the Commonwealth Court relied on its prior decision in *Kachinski v. Workmen's Compensation Board*, 91 Pa. Cmwlth. 543, 498 A.2d 36 (1985), and held that the employer failed to specifically match the duties of the job to her individual capabilities. However, in our decision in *Kachinski* we held that the threshold burden of an employer is to show that he referred the claimant to a job within the category for which the claimant received medical clearance. *Kachinski v. Workmen's Compensation Appeal Board*, supra at 252, 532 A.2d at 380.

Furthermore, in Kachinski we rejected the Commonwealth Court's approach of requiring the employer to specifically detail every aspect of a job before it can be considered within the capability of the claimant. *Farkaly*, 516 Pa. at 259–60, 532 A.2d at 383.

*Kachinski* clearly stated that an employer at the time of injury had no duty to inform the injured employee of every aspect of every job in question. The Supreme Court deemed such a duty to be a cumbersome burden which to it seemed unreasonable in light of the fact that only so much can be known about a job in advance. The Supreme Court then stated: "It is enough that the employer produce *medical evidence* describing the claimant's capabilities." (Emphasis added.) This was reemphasized by the Supreme Court in *Farkaly* when it stated, "in our decision in *Kachinski* we held that the threshold burden of an employer is to show that he referred the claimant to a job within the category for which the claimant received *medical clearance.*" (Emphasis added.) If it is a cumbersome burden to have the employer convey to the injured employee specifically "every aspect of every job in question," it is equally a cumbersome burden to have the employer of the injured claimant specify to a prospective

employer every aspect of every physical limitation beyond the *medical evidence* of the claimant's capabilities.

The procedure governing the return to work of injured employees fashioned by the Supreme Court in *Kachinski*, is plain, clear and unambiguous. Nowhere in the procedure is it required, explicitly or impliedly, that the "injury-employer" convey to the "referral-employer" the nature and extent of the physical limitations of the injured employee in order to establish "actual availability" of work with the referral-employer.

*Young*, as relied on by the majority, requires an injury-employer to demonstrate that a referral-employer was willing to accept the claimant as an employee with all his/her current limitations, which requires the injury-employer to detail the physical limitations of the claimant to establish "actually available" work. *Young* not only goes beyond the requirements of *Kachinski* and *Farkaly*, but in effect adds conditions to those procedures established in *Kachinski* by the Supreme Court, the effect of which is to negate and vitiate both *Kachinski* and *Farkaly*.