648 A.2d 116

**OSCAR MAYER FOODS CORPORATION, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (McALLISTER), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 29, 1994.

Decided Sept. 13, 1994.

Petition for Allowance of Appeal Denied March 3, 1995.

Mark W. Voigt, for petitioner.

Lawrence Doherty, for respondent.

Before SMITH and KELLEY, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

Employer Oscar Mayer Foods Corporation petitions for review of the February 17, 1994 order of the Workers' Compensation Appeal Board (Board) which affirmed Referee Martin Burman's decision to deny Employer's petition to terminate or modify Claimant Elmer McAllister's total disability benefits. Because we determine that the Board erred in refusing to modify the benefits, we reverse. However, because the amount of modification has not been determined by the Referee or the Board, we remand for further proceedings.

The broad question raised is whether the Board erred as a matter of law in concluding that Employer failed to meet its burden of proving that one or more of five jobs referred to Claimant were "actually available" to him under the standards of *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987) and its progeny. Here, the vocational counselor, who solicited the job referrals, submitted to the prospective employers a "functional capacities" form describing Claimant's physical restrictions and limitations. The very narrow issue before this Court is whether that form was adequate to inform either Claimant

or the prospective employer as to Claimant's ability to perform the job in question. On appeal, neither party questions the adequacy of the job descriptions submitted to Claimant; but Claimant argues that the Board was correct in holding that further details as to the contesting doctor's conflicting medical opinions should have been made available.

On March 15, 1990, Claimant suffered an injury to his right shoulder while in the course and scope of his employment as a laborer.[1] Employer issued a notice of compensation payable and Claimant received $324.59 a week in temporary total disability benefits. On April 4, 1991, Employer filed a petition to terminate or modify Claimant's benefits, alleging that Claimant had sufficiently recovered from his work-related injury to perform available work within certain limitations.

The Referee entered the following relevant findings:

3. In support of this petition [Employer] presented the testimony of Joseph Iannotti, M.D., a board certified orthopedic surgeon, who examined claimant on July 26, 1990. Dr Iannotti was of the opinion that claimant had sufficiently recovered from his rotator cuff injury, that he was able to perform certain light duty or sedentary work in accordance with certain restrictions that Dr. Iannotti indicated in a physical capacity form which he filled out.

4. Dr. Iannotti was further of the opinion that surgery would not be appropriate for claimant but that he could benefit from a daily home exercise program. Dr. Iannotti further testified that he received a series of job descriptions from a vocational expert and that he approved five (5) of them from a physical standpoint. I find the testimony of Dr. Iannotti in this regard to be credible and adopt it as the facts of this case.

. . . .

6. [Employer's vocational counselor] testified that she informed prospective employers concerning the restrictions

---

1. Claimant had suffered a torn right shoulder rotator cuff ten years earlier while working for the same employer, but had returned to work at no loss of earnings thereafter.

contained in the functional capacities form but withheld all other information concerning claimant's limitations or the nature of his injury. [The counselor] further testified that she located approximately eight (8) positions and forwarded letters to claimant concerning them. Three of these positions were not approved by Dr. Iannotti. I find the testimony of [the counselor] to be credible although her failure to utilize all medical information available to her and her failure to inform prospective employers fully as to the nature of claimant's disability makes her testimony not persuasive concerning the availability of light or sedentary employment for claimant.

(Referee's Findings of Fact Nos. 3, 4 and 6.)

Claimant testified on his own behalf. He stated that he had been treating with Dr. Zaslow since 1980. He further testified that he received the letters concerning the job referrals. Claimant stated that he called two of the employers but failed to pursue *any* of the jobs based upon his own opinion of his disability. The Referee found Claimant to be credible but determined that his failure to pursue the job referrals was inappropriate. The five jobs cleared by Dr. Iannotti which were not pursued by Claimant were: Wackenhut Corp., security guard; Pinkerton, security guard; Sheraton University City, cashier; and Browning–Ferris, dispatch. (R.R. 84a–91a; 99a–105a; 120a–126a; 127a–140a.)

The Referee concluded that, because Employer possessed numerous medical reports from both physicians and failed to advise prospective employers of anything more than was contained in the functional capacities form, the vocational counselor

failed to provide sufficient information to enable employers to determine their willingness to hire claimant within his medical [capabilities.] As a result, [Employer] has failed to meet his burden of proving available employment suitable for claimant within his physical limitations and pain.

(Referee's Conclusion of Law No. 4.) The Board affirmed the Referee's refusal to modify.[2]

■ Employer filed its petition to terminate and/or modify Claimant's benefits based on the oft-quoted four prong test applied by the Supreme Court in *Kachinski*. Under *Kachinski*, an employer who seeks to modify a claimant's benefits on the basis that the claimant has recovered some or all of his ability must produce medical evidence of a change in condition. The employer must then produce evidence of referrals to then open jobs which fit the occupational category for which claimant has been cleared. The burden then shifts to the claimant to prove that he has acted in good faith in following up on those referrals.

■ The Board concluded that Employer did not meet its burden under the second prong of *Kachinski* because it did not prove that the jobs to which it referred Claimant were "actually available" to Claimant. The Board appears to interpret *Kachinski* as requiring an employer to prove that it provided *all* medically relevant information regarding a claimant's condition to a prospective employer before such employer can be found to have agreed to consider the claimant for a position with all his current physical limitations. We disagree with this interpretation of the law.

In *Kachinski*, the Supreme Court agreed with this Court that for a job to be "available", it must be *actually* available to the claimant in question. The Supreme Court accepted the general analysis of the Honorable Theodore O. Rogers, who had spoken for a majority of this Court, as to the meaning of the term "actually available." [3] However, the Supreme Court

2. Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Sebro)*, 132 Pa.Commonwealth Ct. 288, 572 A.2d 843 (1990).

3. A position may be found to be actually available, or within the claimant's reach, only if it can be performed by the claimant, having regard to his physical restrictions and limitations, his age, his intellectual capacity, his education, his previous work experience, and other relevant considerations, such as his place of residence.

*disagreed* with Commonwealth Court's "hypertechnical analysis of the jobs in question" and instead, approved generally the analysis of Judge Doyle's dissent in this Court and found that:

> [I]n applying this definition [as stated in footnote 3] to the facts of this case the court went beyond its terms and basically imposed on the employer the duty to specify every aspect of every job in question: a cumbersome burden which seems unreasonable in light of the fact that only so much can be known about a job in advance. It is enough that the employer produce medical evidence describing the claimant's capabilities, and vocational evidence classifying the job, *e.g.*, whether it is light work, sedentary work, etc., along with a basic description of the job in question. From such evidence it will be up to the referee to determine whether the claimant can perform the job in question. *See generally,* Dissenting Opinion, Doyle, J. *Kachinski, supra,* 91 Pa.Commonwealth Ct. at 550, 498 A.2d at 40. Thereafter, the decision of the referee will be reviewable as a finding of fact.

*Kachinski,* 516 Pa. at 251, 532 A.2d at 379.

We believe that a similar analysis should be applied in our case, even though the precise issues are slightly different: here, whether an adequate description of the prospective employee's physical capabilities was given to the prospective *employer;* there, whether an adequate description of the prospective job was given to the *claimant.* In both cases, however, generalized good faith is sufficient. In neither case is a detailed hypertechnical analysis needed.

In *Farkaly v. Workmen's Compensation Appeal Board (Baltimore Life Insurance Co.),* 516 Pa. 256, 532 A.2d 382 (1987), a case decided on the same day as *Kachinski,* the Supreme Court stated that it held in *Kachinski* that the "threshold burden of an employer is to show that he referred the claimant to a job *within a category* for which the claimant received medical clearance." *Farkaly,* 516 Pa. at 259, 532

*Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.),* 91 Pa.Commonwealth Ct. 543, 546, 498 A.2d 36, 38–39 (1985) (Rogers, J.).

A.2d at 383 (emphasis added). In *Farkaly,* the Court found that the referee was correct in finding that the jobs of cashier and telephone solicitor were within the claimant's capabilities, "which were the ability 'to do part-time sedentary work provided she is not required to sit or stand for long periods. She cannot reach above her shoulders, lift beyond 10 pounds or push or pull heavy weights.'" *Id.* at 260, 532 A.2d at 384.

In support of its interpretation, the Board relies upon *Young v. Workmen's Compensation Appeal Board (Weiss Markets, Inc.),* 113 Pa.Commonwealth Ct. 533, 537 A.2d 393, *petition for allowance of appeal denied,* 520 Pa. 622, 554 A.2d 513 (1988). In *Young,* we found that the vocational counselor who referred jobs to claimant did not inform any of the prospective employers that the claimant was a Methadone addict who had undergone seven back operations in three years and had not worked in six years. "Most importantly, none of the employers indicated that they would accept an application from Claimant." *Id.* 113 Pa.Cmwlth. at 539, 537 A.2d at 396. We concluded that the vocational counselor did no more than look up minimum wage jobs in the want ads and place a phone call. "If the employer is unwilling to even take an application from a claimant in response to the vocational expert's inquiries, the claimant has received nothing more than an opportunity to walk off the street and apply for a want ad job in the same manner as any member of the general public. This is not a job *referral.*" *Id.* 516 Pa. at 540, 532 A.2d at 396.

█ *Young* is clearly distinguishable from the facts before us. Claimant is not a Methadone addict who has had major surgery in the recent past and who has not worked for six years. He is an unskilled laborer who has been cleared by a physician to return to light-duty work within certain limitations. Further, the jobs referred to Claimant were with employers willing to consider hiring Claimant with the physical limitations described in the functional capacities form approved by Dr. Iannotti. We hold this form to be adequate notice from the employer. The form advised both Claimant and the prospective employer as follows:

1. Claimant was capable of sitting 4 hours at once and standing 7 hours in an 8 hour day; standing 4 hours at once and standing 7 hours in an 8 hour day; and walking 2 hours at once and 6 hours in an 8 hour day.

2. Claimant was capable of lifting or carrying up to 10 pounds "frequently," 11–15 pounds "occasionally."

3. As to repetitive hand activities with his right hand, Claimant could not perform simple grasping, pushing/pulling arm controls or fine manipulation. As to the left hand, there were no such restrictions.

4. Claimant could use either his right foot, his left foot or both of them for operating foot controls.

5. Claimant was able to: bend occasionally; squat never; crawl never; climb stairs frequently; climb ladder never; reach at waist and shoulder never with right hand and occasionally with left hand; never reach above shoulder with either hand.

6. Claimant was able to work occasionally at unprotected heights, around moving machinery, and to operate industrial machinery, but could not be exposed to marked changes in humidity and/or in temperature.

(R.R. 84a.)

The Board also relied upon *Brown v. Workmen's Compensation Appeal Board (Cooper Jarrett, Inc.)*, 150 Pa.Commonwealth Ct. 614, 616 A.2d 121 (1992), *petition for allowance of appeal denied*, 533 Pa. 637, 621 A.2d 582 (1993). In *Brown*, we concluded that the employer failed to prove the jobs referred to the claimant were actually available to him because the rehabilitation counselor did not inform prospective employers of the claimant's inability to sit without his leg extended, to work in bad weather, to work without his leg swelling and his back problems. The rehabilitational counselor only informed employers of the claimant's inability to walk more than one block, although he was aware of the claimant's other numerous limitations. Based on the lack of information provided to the employers regarding the claimant's physical

limitations, we found that the jobs referred to the claimant were not actually available to him.

Here, the Board did not hold, as in *Brown*, that the Employer failed to inform employers of all Claimant's physical limitations. The Board did conclude that the counselor failed to provide "sufficient information to enable employers to determine their willingness to hire claimant within his medical capacities." (Boards Decision at 4.) We disagree.

■ Nowhere in *Young, Brown*, or *Kachinski* is there a requirement that employers be provided with *all* of a claimant's medical information. Under *Kachinski*, employers must be informed of the category of work for which the claimant has been cleared to perform; e.g., light-duty, sedentary work. An employer must also be informed of the physical restrictions placed upon claimant's abilities. It is not necessary for the employer to be informed of the precise nature of Claimant's disability. Whether a claimant has had a torn rotator cuff, a low back strain or an amputated leg does not matter if, in fact, the claimant can perform the duties of the referred job with the physical restrictions placed upon him by his injury. The nature of the injury is not relevant to the employer's decision to consider hiring the claimant, only the physical restrictions placed upon him by that injury.

The counselor, Ms. Scutt, testified that she evaluated Claimant's functional capacities based on the medical evidence available to her. (R.R. at 19a–20a.) Specifically, she relied upon the functional capacities forms provided to her by Drs. Iannotti and Zaslow. (R.R. at 83a, 84a.) Ms. Scutt located eight jobs which, in her professional opinion, Claimant was capable of performing. Five of those jobs were approved by Dr. Iannotti. (R.R. at 154a.) Ms. Scutt contacted the prospective employers and informed them of Claimant's physical capacities and limitations based upon the functional capacities forms. Ms. Scutt testified that the prospective employers would actually consider hiring Claimant if he applied for the jobs. (R.R. at 25a.) Referee Burman found Ms. Scutt to be a credible witness.

■ We conclude that, as a matter of law, Employer met its burden of proving that the jobs to which it referred Claimant were actually available to him because the prospective employers were given all the information required by current Pennsylvania law to determine if they would consider hiring Claimant. The burden then shifted to Claimant who clearly failed to present any credible evidence that he acted in good faith in following up on any of the referrals. Therefore, we reverse the order of the Board. Because of our holding, we need not address Employer's other arguments including the effect of the Americans With Disabilities Act of 1990 in this type of a case.[4]

For the reasons stated above, we reverse the order of the Board and remand this case to the Referee for further proceedings regarding the appropriate modifications to Claimant's benefits based on his failure to pursue the five actually available jobs referred to him.

### ORDER

**AND NOW,** this 13th day of September, 1994, the order of Workers' Compensation Appeal Board dated February 17, 1994 at No. A92–3316 is hereby reversed and the matter is remanded to the Board for further remand to the Referee to determine the appropriate modifications to Claimant's benefits based upon Claimant's failure to pursue one or more of the five actually available jobs for which he had been given medical clearance by Dr. Iannotti.

Jurisdiction relinquished.

■

4. Employer argues on appeal that requiring employment counselors to inform prospective employers of conflicting medical testimony and to disclose a claimant's non-job related physical limitations would violate the Americans With Disabilities Act, 42 U.S.C. § 12112(b)(1). Because we are unable to find in the reproduced record any showing that this issue was raised or argued before either the Board or the Referee, we do not address it here.