Neftaly CARDONE, Petitioner,

v.

WORKERS' COMPENSATION APPEAL BOARD (AMOROSO BAKING COMPANY), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 4, 2000.

Decided Jan. 10, 2001.

Lisa Ann Lesh and Larry Pitt, Philadelphia, for petitioner.

Anthony J. Bilotti, Philadelphia, for respondent.

Before DOYLE, President Judge, LEADBETTER, Judge, and LEDERER, Senior Judge.

DOYLE, President Judge.

Neftaly Cardone (Claimant) filed a petition for review of the order of the Workers' Compensation Appeal Board (Board) which affirmed the decision of a Workers' Compensation Judge (WCJ) granting the modification petition filed by Amoroso Baking Company (Employer). We affirm.

Claimant worked as a baker for Employer when, in the course of his employment on May 25, 1989, he pulled a rack of dough and felt pain in the base of his neck and his right shoulder. He suffered an injury to the right shoulder and a cervical disc

herniation and received temporary total disability benefits. On or about February 20, 1997, Employer filed a modification petition alleging that as of May 7, 1996, Claimant's condition had changed to the point that he was capable of returning to work in jobs that were available in the community and offered to him.[1]

In support of its petition, Employer presented the testimony of Dr. Andrew Collier; a vocational expert, Christy McGarrity; and a "job developer," Melvin Cooksey. In opposition to the petition, Claimant presented the deposition testimony of Dr. George Rodriguez and testified himself. The WCJ granted Employer's petition and serially modified Claimant's benefits based upon the wages that Claimant would have earned had he applied for the positions that were offered to him. The Board affirmed the WCJ's decision and Claimant filed the instant Petition for Review with this Court.[2]

■ Claimant first alleges that the WCJ's decision granting the modification petition is not supported by substantial competent evidence because the medical evidence relied upon by the WCJ did not prove that Claimant's condition changed within the meaning of the Act. Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Bethenergy Mines v. Workers' Compensation Appeal Board (Skirpan)*, 531 Pa. 287, 612 A.2d 434 (1992). And, an employer who seeks to modify a claimant's benefits on the grounds that he has recovered some or all of his ability must first produce medical evidence of a change in condition. *Kachinski v. Workmen's Compensation Appeal Board (Vepco Constr. Co.)*, 516 Pa. 240, 532 A.2d 374 (1987).

In the instant case, Employer presented the medical expert testimony of Dr. Collier, a board certified orthopedic surgeon. Dr. Collier performed three physical examinations on Claimant. He first examined Claimant on behalf of Employer on March 24, 1994, and diagnosed Claimant as having degenerative changes of the cervical spine, a cervical strain and sprain, an aggravation of the underlying disc disease and a small disc herniation at C5–6. He also diagnosed Claimant as having impingement syndrome with subacromial bursitis and bicipital tendonitis, which was incompletely rehabilitated. He testified that Claimant was capable of returning to work in a modified position as of the date of the March 24, 1994 evaluation.

Dr. Collier also evaluated Claimant on April 26, 1995. Dr. Collier was then of the opinion that Claimant had improved from the last time he saw him and that he could return to work in a modified-duty position.

1. Section 413(a) of the Workers' Compensation Act(Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 772, provides as follows:
   A referee designated by the department may, at any time, modify, reinstate, suspend or terminate a nótice of compensation payable, an original or supplemental agreement or an award of the department or its referee, upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed. Such modification, reinstatement, suspension, or termination shall be made as of the date upon which it is shown that the disability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or upon which it is shown that the status of any dependent has changed....

And provided further, That where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, unless it be shown that the loss in earnings does not result from the disability due to the injury.

2. Our standard of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Morey v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 684 A.2d 673 (Pa.Cmwlth. 1996).

He examined Claimant again on February 28, 1996, and at that time Claimant still had difficulties with his neck and right shoulder. At that time Dr. Collier diagnosed Claimant as having an acute cervical spine sprain and strain, a herniated disc at C5–6 and very minimal residual tendonitis in the right shoulder. He testified that claimant could return to work with restrictions. He reviewed eight job descriptions and approved Claimant to perform seven of them.

In support of its petition to modify, the Employer focuses on the following testimony of Dr. Collier:

His basic condition had change [sic]. His range of motion in his neck had gotten much better.

The radicular complaints or findings had pretty well dissipated and he didn't have anything neurologically. His compression test was negative.

His range of motion of his shoulder was improved, so, no, I thought he had improved slowly...

Each time I saw him, he had gotten somewhat better.

(Notes of Testimony (N.T.), Deposition of Dr. Collier, pp. 32–33.)

Claimant contends, contrary to the doctor's opinion, that his physical capacities had basically remained the same for all three of his examinations. He argues that despite this, Dr. Collier released Claimant to return to work following the third exam only. However, Claimant's argument fails to take into consideration Dr. Collier's testimony as a whole. Although Dr. Collier testified that Claimant's physical capacities had "pretty much stayed about the same," he also stated, "I had increased his capacities a little bit each time." (Deposition of Dr. Collier, p. 33.) Dr. Collier's testimony that Claimant's condition changed from his first and second evaluations, coupled with his testimony that Claimant's physical capacities increased, supports the WCJ's findings. Therefore, we will not disturb those findings and reject Claimant's argument in this regard.

Claimant next contends that Employer failed to produce any evidence to establish that the prospective employers to whom he had been referred had been informed of Claimant's physical limitations and that, as such, the jobs offered were not "actually available" pursuant to *Young v. Workmen's Compensation Appeal Board (Weiss Markets, Inc.)*, 113 Pa.Cmwlth. 533, 537 A.2d 393 (1988); *petition for allowance of appeal denied*, 520 Pa. 622, 554 A.2d 513 (1988). Employer, on the other hand, argues that Claimant's reliance on *Young* is misplaced and that the facts in this case are distinguishable from *Young* and more analogous to *Delaware Valley Truck Parts v. Workmen's Compensation Appeal Board (Eskuchen)*, 168 Pa.Cmwlth. 162, 649 A.2d 999 (1994) and *Garnett v. Workmen's Compensation Appeal Board (Equitable Gas Co.)*, 158 Pa.Cmwlth. 100, 631 A.2d 705 (1993); *petition for allowance of appeal denied*, 537 Pa. 613, 641 A.2d 312 (1994). We agree with Employer.

When an employer has produced evidence that the claimant's condition had changed, it must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits the occupational category for which the claimant has been given medical clearance; e.g., light work, sedentary work, etc. *Kachinski*. If the employer has proven the above, the burden of proof then shifts to the claimant to show that he or she, in good faith, has followed through on the job referral(s). *Id.* A job is not considered to be actually available unless there is evidence that the employer named was willing to accept the claimant as an employee with his or her current physical limitations. *Brown v. Workmen's Compensation Appeal Board (Cooper Jarrett, Inc.)*, 150 Pa.Cmwlth. 614, 616 A.2d 121 (1992); *petition for allowance of appeal denied*, 533 Pa. 637, 621 A.2d 582 (1993); *Young*. A position may be found to be actually available, or within the claimant's reach, only if it can be per-

formed by the claimant, having regard for his physical restrictions and limitations, his age, his intellectual capacity, his education, his previous work experience, and other relevant considerations, such as his place of residence. *Dilkus v. Workmen's Compensation Appeal Board (John F. Martin & Sons)*, 543 Pa. 392, 671 A.2d 1135 (1996).

In *Young*, the vocational counselor did not tell potential employers that the claimant was a methadone addict who had undergone seven back operations in three years and had not worked in six years. In that decision, we held that the failure to notify the potential employers of the claimant's limitations did not render the jobs offered "actually available" under *Kachinski* on the basis that there was no evidence that the employers would have accepted an application from the claimant had they known of the claimant's extreme limitations.

We discussed the *Young* decision in our opinion in *Brown*. In *Brown*, we held that the employer did not prove job availability because the vocational witness testified that he told the prospective employers of the claimant's general disability, without identifying the actual limitations. On the other hand, in *Garnett*, since the claimant there had no known physical impairments of the magnitude of the claimant in *Young*, and since the vocational expert discussed the claimant's limitations and capabilities with the potential employers, we determined that the prospective jobs *were* "available" within the meaning of the Act. Further, in *Delaware Valley*, we held that it was not necessary, under *Kachinski*, to provide a prospective employer with *all* of a claimant's physical limitations, but only those physical restrictions which are relevant to the duties of the job referred to the claimant.

■ Finally, in *Lathilleurie v. Workmen's Compensation Appeal Board (Tom McMackin Citgo)*, 660 A.2d 694 (Pa. Cmwlth.1995), we noted that nowhere in *Young*, *Brown*, or *Kachinski* is there a requirement that employers be notified of all of a claimant's medical information. Under *Kachinski*, employers must be informed of the category of work that the claimant has been given medical clearance to perform and the employer must also be informed of the claimant's physical restrictions. It is not necessary, however, that the employer be informed of the precise nature of the claimant's disability.

■ In the case at bar, Employer's vocational expert witness testified that she contacted the employers to see if the jobs, as described in the job bank, had stayed the same as they were when they were previously entered into the bank. She also testified that in conjunction with Claimant's capacities, she determined that the jobs fit within Claimant's specific limitations. (Deposition of Christy McGarrity, p. 20.) The vocational expert contacted the prospective employers prior to Claimant being notified of the job openings to be certain that the jobs offered to Claimant were actually available. Most important, any lack of evidence in the record indicating that the prospective employers were not aware of all of Claimant's physical restrictions is of absolutely no import here because Claimant's physical limitations were not relevant to the performance of the jobs which had been proffered. The job descriptions, for the jobs approved by Employer's medical expert, provided for lifting items not to exceed twenty pounds. Each job provided for sitting, standing and walking alternately. It is evident from these facts that Claimant would have had no difficulty with regard to the lifting requirements of the jobs. In addition, Defendant's medical expert cleared Claimant to sit, stand and walk three to four hours each in an eight-hour day. The proffered jobs clearly fit within these restrictions. Claimant could have performed the jobs as described without having to alter any of the job requirements. Requiring Employer to notify prospective employers of restrictions that were not within the parameters of the proffered employment would be an exercise in futility; prospective employ-

ers could and would legitimately assume that the claimant could perform the job if the claimant's abilities matched the job description. We, therefore, hold that, under *Delaware Valley,* Employer was not required to specifically notify prospective employers of Claimant's limitations since the proffered employment, as described in the job descriptions of record, were within the capability of Claimant to perform. Succinctly stated, the jobs offered and approved by Employer's medical expert were actually available to Claimant and were jobs that he could perform.

■ Claimant also contends that his inability to speak English well is a relevant factor which the vocational witness failed to take into consideration in offering Claimant employment opportunities. He asserts that her failure to take this factor into consideration renders the jobs offered not actually available. Claimant testified that his non-work-related stroke rendered him unable to speak English and that before the stroke he was capable of speaking English at the work site. (Deposition of Claimant, July 18, 1997, p. 17.) However, we have held that an employer is not required to show that a job is within a claimant's subsequent non-work-related physical limitations. *Carpentertown Coal & Coke Co. v. Workmen's Compensation Appeal Board (Seybert),* 154 Pa.Cmwlth. 408, 623 A.2d 955 (1993); *petition for allowance of appeal denied,* 535 Pa. 640, 631 A.2d 1011 (1993). Furthermore, no evidence was submitted to suggest that Claimant would have been required to speak English in the positions that were offered to him. Therefore, Claimant's argument, in this regard, also fails.

Claimant next asserts that it is unclear whether the jobs referred to Claimant fell within his medical restrictions. Dr. Collier testified that he reviewed eight job descriptions and seven of the jobs fit within

Claimant's physical capabilities. (Deposition of Dr. Collier, p. 31.) The WCJ accepted Dr. Collier's testimony and, as such, we do not agree with Claimant on this issue.

Claimant argues as well that Dr. Collier did not take into consideration Claimant's neck injury when determining the appropriateness of the positions offered. However, the record is clear that Dr. Collier took Claimant's low back, shoulder and neck complaints into consideration in approving the jobs. (Deposition of Dr. Collier, p. 32.) We therefore reject Claimant's argument.

■ Finally, Claimant argues that the WCJ erred in serially reducing Claimant's benefits based upon each of the six jobs for which Claimant failed to apply. In this respect, Claimant would like us to revisit an issue which already has been addressed by this Court in *Castro v. Workmen's Compensation Appeal Board (Albert Einstein Med. Ctr.),* 166 Pa.Cmwlth. 89, 645 A.2d 1377 (1994); *petition for allowance of appeal denied,* 540 Pa. 604, 655 A.2d 992 (1995). In *Castro,* we determined that a WCJ may first modify a claimant's benefits based on the wage of a job referral which a claimant fails to pursue, and then later suspend benefits based on the higher wage of a later job referral. A serial reduction of wages based upon job referrals is a logical application of our holding in *Castro.* We, therefore, hold that a serial reduction of wages is permissible when modifying a claimant's benefits based on wages of subsequent job referrals which a claimant fails to pursue. The WCJ found that Claimant failed to apply for six of the jobs made available to him, and serially modified Claimant's wages based upon the Claimant's failure to apply for four of those jobs. We will not disturb the WCJ's findings based upon our holding in *Castro.*[3]

**3.** Claimant would like this Court to essentially overrule *Castro* to effectuate the Act's humanitarian objectives. As we stated in *Castro,* allowing a claimant to ignore jobs referred to

him by the employer and only sanctioning a claimant with a modification based on the wage of the first job, would reward claimant for his bad faith in failing to apply for the

Accordingly, we affirm the order of the Board.

### ORDER

**NOW**, January 10, 2001, the Order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.

The decision in this case was reached before the expiration of the appointment of Senior Judge LEDERER to the Commonwealth Court by the Supreme Court of Pennsylvania.

positions offered. In accord with our holding in *Castro,* we do not believe that serially modifying Claimant's benefits under these facts compromises the humanitarian objectives of the Act.