Edward FINLEY, Petitioner,

v.

**WORKERS' COMPENSATION AP-
PEAL BOARD (USX CORPO-
RATION), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 13, 2002.

Decided Nov. 12, 2002.

Reargument Denied Jan. 3, 2003.

Norman J. Weintein, Philadelphia, for petitioner.

Thomas E. Panzer, Doylestown, for respondent.

Before McGINLEY, Judge, PELLEGRINI, Judge, and McCLOSKEY, Senior Judge.

Opinion by Senior Judge McCLOSKEY.

Edward Finley (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board), affirming in part and modifying in part an order of the Workers' Compensation Judge (WCJ), granting the modification petition filed on behalf of USX Corporation (Employer). We now reverse.

Employer employed Claimant as an air conditioning mechanic. In the course and scope of his employment on January 9, 1984, Claimant sustained an injury to his back when he slipped and fell while removing a water cooler. Two weeks later, Claimant underwent an L5 S1 laminectomy. Claimant received benefits pursuant to a notice of compensation payable (NCP) issued by Employer. The NCP described Claimant's injury as a "lumbar sacral sprain." (R.R. at 4a). Claimant thereafter entered a rehabilitation program, during which he re-injured his back. Claimant attempted to return to a less strenuous position in Employer's janitorial department in 1987, but he was unable to perform the duties of the job.

In 1989, Claimant underwent lumbar fusion surgery as a result of continued instability of his spine. Claimant continued to experience pain in his back and legs over the course of several years. On July 2, 1996, Dr. David Petro evaluated Claimant. Dr. Petro was a staff physician/plant medical director at the plant at which Claimant had previously worked.[1] Claimant complained to Dr. Petro of pain in his back with radiating left leg pain, as well as spasms in both legs. Dr. Petro noted some drag and muscle wasting in Claim-

ant's left leg, coupled with reports of low back pain during flexion. Following the examination, a review of Claimant's previous medical records and a review of a surveillance video,[2] Dr. Petro opined that Claimant was capable of performing sedentary work, but no bending and no lifting over ten pounds. Dr. Petro reiterated his findings and opinion in a report dated July 10, 1996.

Employer thereafter retained Donna Nealon, a vocational counselor with LRC Rehabilitation, in order to assist Claimant in locating suitable employment opportunities as per Dr. Petro's opinion and subsequent report. At that point in time, Claimant had been represented by counsel.[3] Ms. Nealon forwarded letters to Claimant's counsel attempting to schedule an initial vocational evaluation with Claimant. Claimant's counsel, however, declined the meeting. As a result of her inability to meet with Claimant, Ms. Nealon based her evaluation on Claimant's employment records with Employer, including his original employment application, as well as Dr. Petro's report.

Ms. Nealon thereafter referred five separate positions to Claimant, all of which had been approved by Dr. Petro. Claimant attended interviews at each of the five prospective employers. However, Claimant was not offered a position. Ms. Nealon notified Employer that Claimant had focused on the negative aspects of his condition with each prospective employer and of her observation that Claimant had no desire to return to work. Employer then proceeded to file a petition to modify

---

1. Dr. Petro examined Claimant at the time of his initial injury in January of 1984 and on several occasions thereafter, including July 2, 1996.

2. Dr. Petro noted that the surveillance video showed Claimant sitting and standing for pro-

longed periods of time with an increased dragging of his left leg.

3. Claimant has since sought and secured new counsel.

Claimant's compensation benefits alleging that he had failed to pursue available job opportunities within his vocational and physical capabilities in good faith. Claimant filed an answer denying the allegations of Employer's petition.

The case was assigned to the WCJ and proceeded with hearings. At these hearings, Employer presented the deposition testimony of Dr. Petro. Dr. Petro is Board-certified in family practice and preventive medicine.[4] Dr. Petro had examined Claimant on several previous occasions, the relevant examination for our purposes being July 2, 1996. Dr. Petro also reviewed Claimant's previous medical records, including the records regarding his two previous surgeries. At the examination, Dr. Petro noted that Claimant complained of low back pain with radiating left leg pain and spasms in both legs. Dr. Petro also noted that Claimant reported that his left leg would drag after walking one mile. Dr. Petro's examination did reveal some deconditioning and muscle wasting in the left leg, as well as reported low back pain during flexion.

Nevertheless, Dr. Petro opined that Claimant was capable of performing sedentary work, with such restrictions as no bending and no lifting over ten pounds. In addition, Dr. Petro indicated that he had reviewed a job description for each of the five positions referred to Claimant by Ms. Nealon and that he had approved each one as being within Claimant's physical capabilities. On cross-examination, Dr. Petro indicated that his examination of

Claimant was consistent with the reports of Claimant's neurosurgeon, which noted Claimant's continuing back and leg pain.

Employer also presented the deposition testimony of Ms. Nealon. Ms. Nealon indicated that she is the director of LRC Rehabilitation, which assists injured workers in returning to gainful employment. Ms. Nealon described certain problems she had with setting up a vocational interview with Claimant. Specifically, she indicated that Claimant's counsel at the time refused her repeated requests for the same. Hence, in order to assess Claimant's skills and current physical abilities, Ms. Nealon indicated that she obtained a copy of Claimant's original employment application with Employer and a copy of the report of Dr. Petro following his July 2, 1996, examination of Claimant.

Ms. Nealon later identified and referred five separate positions to Claimant.[5] Ms. Nealon viewed the performance of all five positions and prepared a job analysis of each, which was thereafter forwarded to Dr. Petro for his approval. Claimant attended interviews at each of the five prospective employers. Ms. Nealon was also present at these interviews and described Claimant's demeanor. At CTIS, Claimant informed the employer that he would have to stand for the entire interview as he had a physical problem which would essentially flare up while sitting. At Sir Speedy and Kaleo Publications, Claimant indicated that he desired a wage of $15.00 $16.00 per hour, similar to his previous wage from Employer, when the positions paid only approximately half that amount.[6] At Lib-

---

**4.** As noted above, Dr. Petro was a staff physician/plant medical director at the plant where Claimant had worked.

**5.** These five positions included telephone surveyor with CTIS, stitching and collating paper at Sir Speedy, driving a senior citizen bus at Liberty Vans, telemarketer at Kaleo Publications and telemarketer at Progressive Busi-

ness Publications. Ms. Nealon viewed each of these positions, discussed the positions with the prospective employers and attended each of Claimant's interviews for these positions.

**6.** Additionally, at the Sir Speedy interview, Claimant informed Ms. Nealon that he was in so much pain he was going to vomit, but

erty Vans, Claimant indicated that he had a previous DUI on his driving record.[7] At this interview, Claimant also apparently informed the employer of his medical condition.[8] At Progressive Business Publications, Claimant informed the employer that he could not perform the position in a sitting fashion.

Based upon her observations, Ms. Nealon indicated to Employer her belief that Claimant had no desire to obtain any of the positions. Ms. Nealon described Claimant's conduct as focusing upon negative aspects at each interview. On cross-examination, Ms. Nealon acknowledged that Dr. Petro did not complete a functional capacity evaluation and that she did not inform the prospective employers of Claimant's back injury due to the fact that she was unable to obtain an "ADA release" from Claimant.[9] (R.R. at 287a). Ms. Nealon also essentially acknowledged that each of the prospective positions required Claimant to engage in such activities as sitting for extended periods of time or pushing/pulling a lever.

In opposition to Employer's petition, Claimant testified on his own behalf, relating a history of his work injury, subsequent surgeries and his ongoing complaints of pain in his back and legs. Claimant indicated that he has a very difficult time sitting or standing for extended periods of time and that the pain medication frequently makes him nauseous. Regarding his previous DUI, Claimant indicated that he had a DUI on his record and did not believe it was expunged.[10] Regarding his request for $15.00 $16.00 per hour, Claimant indicated that such a request was "second nature" as that was his previous wage. (R.R. at 344a).

Claimant also presented the testimony of Stephen Rodos, his initial counsel in this matter. Attorney Rodos indicated that he handles a limited number of workers' compensation cases each year. He also indicated that Ms. Nealon contacted him regarding potential job opportunities for Claimant and requested to talk to Claimant. Contrary to Ms. Nealon's assertions, Attorney Rodos indicated that he informed Ms. Nealon that she could call Claimant any time and conduct an interview. Attorney Rodos acknowledged receiving the job referral letters from Ms. Nealon and indicated that he made sure Claimant attended each interview.

Additionally, Claimant presented the deposition testimony of Dr. Richard Balderston, his treating physician, who is Board-certified in orthopedic surgery. Dr. Balderston first saw Claimant in January of 1989, at which time he diagnosed Claimant as suffering from post-laminectomy lumbar

there is no indication that he informed the prospective employer of the same. At the Kaleo Publications interview, Claimant informed Ms. Nealon that he did not know the names and addresses of references and refused to write negotiable in the desired salary range, as Ms. Nealon requested him to do.

7. Ms. Nealon indicated that Claimant later informed her that the DUI had been expunged.

8. However, there is no indication that Claimant exaggerated his condition. Instead, Claimant merely indicated that he had two previous back surgeries and was anticipating

a third. Claimant's treating physician had recommended that he undergo a third back operation.

9. Ms. Nealon explained that she normally obtains such a release during a vocational interview, which, as noted above, was repeatedly refused by Claimant's counsel at the time.

10. Claimant indicated that he participated in the ARD program regarding this DUI on the understanding that it would be removed from his record following completion, but that he was unsure if it was actually removed and did not want to lie to a prospective employer.

instability. Dr. Balderston recommended fusion surgery, which Claimant underwent in May of 1989. Dr. Balderston indicated that he was not happy with the results of this surgery, as Claimant remained unable to return to the activities of daily living.

Dr. Balderston indicated that Claimant has continually experienced pain in his low back and legs, which he attributed to problems with the fusion surgery. Dr. Balderston recommended additional spinal surgery. As to Claimant's physical capabilities, Dr. Balderston was skeptical whether Claimant could return to work, based upon his worsening condition. He was, however, of the opinion that Claimant could not return to a position which required him to sit continuously for eight hours per day. Rather, Dr. Balderston explained that Claimant could not sit or stand for an extended period of time.

Ultimately, the WCJ issued a decision and order denying Employer's modification petition. In rendering her decision, the WCJ accepted the testimony of Dr. Petro and Ms. Nealon as credible and persuasive, and rejected any inconsistent testimony of Claimant, Attorney Rodos and Dr. Balderston as neither credible nor persuasive. Based upon this credible testimony, the WCJ concluded that Employer had demonstrated a change in Claimant's medical condition, but had not referred Claimant to actual, available jobs. This conclusion was premised on the failure of Ms. Nealon, Employer's vocational expert, to inform the prospective employers of Claimant's back injury. Nevertheless, for purposes of completeness, the WCJ proceeded to analyze Claimant's behavior at each interview and concluded that Claimant had not acted in good faith.

Claimant and Employer filed cross-appeals with the Board, which reversed the decision of the WCJ and remanded the case for further findings. Claimant argued that the WCJ's findings of bad faith on his part were not supported by substantial, competent evidence. The Board essentially rejected Claimant's arguments on appeal as an attack upon the WCJ's credibility determinations. Employer, on the other hand, argued before the Board that the WCJ erred as a matter of law in denying its modification petition on the basis that Ms. Nealon failed to inform prospective employers of Claimant's back injury. The Board agreed with Employer and reversed the decision of the WCJ in this regard. In so doing, the Board noted that Ms. Nealon had attempted to obtain Claimant's permission to disclose his disability status, but was unable to meet with Claimant.

Citing the WCJ's findings regarding Claimant's lack of good faith at the prospective job interviews, the Board remanded the case to the WCJ for additional but limited findings regarding "[w]hich proffered positions were otherwise available to the Claimant" and "[t]he temporary partial disability rate applicable to the then open, available positions." (Board's Decision at 8). On remand, the WCJ reiterated and incorporated her earlier findings and conclusions. The WCJ rejected attempts by Claimant to re-visit issues from her original decision, limiting the matter to the issues identified by the Board in its remand order.

As the Board had removed the "legal impediment" from her earlier decision, the WCJ concluded that Employer had met its burden sufficient to warrant a modification of Claimant's benefits. (WCJ's Decision, March 6, 2001, p. 8). Hence, the WCJ issued a decision and order granting Employer's petition and modifying Claimant's benefits based upon the availability of the

telephone surveyor position at CTIS.[11] Once again, both Claimant and Employer filed appeals with the Board. Claimant simply reiterated the issues raised in his previous appeal to the Board and the Board refused to address them a second time. Employer argued that the WCJ erred by failing to further modify Claimant's benefits in accordance with the available bus driver position with Liberty Vans.[12] The Board agreed with Employer and affirmed the WCJ's decision with this additional modification. Claimant now appeals to this Court.

■ On appeal,[13] Claimant argues that the WCJ and the Board erred as matter of law in concluding that the proffered jobs were actually available and that he acted in bad faith at each of the job interviews.[14] We agree in part and disagree in part.

■ An employer who seeks to modify a claimant's benefits on the basis that the claimant has recovered some or all of his ability must: (1) produce medical evidence of a change in condition; and (2) produce evidence of a referral to a then open job which fits in the occupational category for which the claimant has been given medical clearance. *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987). In turn, the claimant must then demonstrate that he has in good faith followed through on the job referral. *Id.*

■ Regarding the second prong above, an employer has the burden to establish that a job is actually available. *See Kachinski; Oscar Mayer Foods Corporation v. Workmen's Compensation Appeal Board (McAllister)*, 167 Pa.Cmwlth.370, 648 A.2d 116 (1994), *petition for allowance of appeal denied*, 540 Pa. 608, 655 A.2d 995 (1995). A position may be found to be actually available, or within the claimant's reach, only if it can be performed by the claimant, having regard to his physical restrictions and limitations, his age, his intellectual capacity, his education, his previous work experience and other relevant considerations, such as his place of residence.[15] *Id.* Additionally, a job is not considered to be actually available unless there is evidence that the prospective employer named was willing to accept the claimant as an employee with his current physical limitations. *Cardone v. Workers' Compensation Appeal Board (Amoroso Baking*

11. The evidence of record indicated that this position was available forty hours per week at a rate of $6.00 per hour.

12. The evidence of record indicated that this position was available forty hours per week at a rate of $7.50 per hour.

13. Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa. Cmwlth.436, 550 A.2d 1364 (1988).

14. Regarding the former, Claimant argues that the proffered jobs did not fall within Dr.

Petro's restrictions and that Ms. Nealon, the vocational counselor, failed to disclose to the prospective employers the work restrictions placed upon him by Dr. Petro.

15. It is for the WCJ to determine if a particular job is suitable for the Claimant. Expert testimony linking the job duties and the medical restrictions is not necessary, i.e., a doctor need not approve specific jobs. The WCJ determines the restrictions from the medical evidence and determines if the jobs as outlined as being available are suitable. *See Kula v. Workers' Compensation Appeal Board (Weiman)*, 710 A.2d 1253 (Pa.Cmwlth.1998); *Farkaly v. Workmen's Compensation Appeal Board (Baltimore Life Ins. Co.)*, 516 Pa. 256, 532 A.2d 382 (1987).

*Company)*, 765 A.2d 1160 (Pa.Cmwlth. 2001).

In this regard, we have previously held that a vocational counselor had a duty to inform prospective employers of a claimant's actual physical limitations. *See Brown v. Workmen's Compensation Appeal Board (Cooper Jarrett, Inc.)*, 150 Pa. Cmwlth.614, 616 A.2d 121 (1992), *petition for allowance of appeal denied*, 533 Pa. 637, 621 A.2d 582 (1993); *Young v. Workmen's Compensation Appeal Board (Weiss Markets, Inc.)*, 113 Pa.Cmwlth.533, 537 A.2d 393 (1988), *petition for allowance of appeal denied*, 520 Pa. 622, 554 A.2d 513 (1988). However, we later clarified this issue by indicating that it was not necessary to inform a prospective employer of all of a claimant's medical information or of the precise nature of a claimant's disability. *See Sakell v. Workmen's Compensation Appeal Board (Ridgaway Philips Health Care Center)*, 651 A.2d 704 (Pa. Cmwlth.1994), *petition for allowance of appeal denied*, 541 Pa. 647, 663 A.2d 698 (1995); *Delaware Valley Truck Parts v. Workmen's Compensation Appeal Board (Eskuchen)*, 168 Pa.Cmwlth.162, 649 A.2d 999 (1994).[16]

■ In this case, there is no dispute that Employer presented evidence regarding a change in Claimant's medical condition, thereby satisfying the first prong of *Kachinski.* Hence, we are only concerned with the second and third prongs, i.e., actual availability of the proffered jobs and Claimant's good/bad faith. With respect to actual availability, Claimant first argues that the proffered jobs did not fall within Dr. Petro's restrictions. We must dis-

agree with Claimant in this regard. Following his examination of Claimant on July 2, 1996, Dr. Petro issued a report detailing the same and providing for Claimant's restrictions. However, in his report, Dr. Petro merely restricted Claimant from bending and from lifting over ten pounds. Ms. Nealon indicated before the WCJ that she relied exclusively upon this report in finding suitable jobs. The record lacks any evidence that the proffered jobs exceeded Dr. Petro's restrictions.

■ Next, Claimant argues that the proffered jobs were not actually available as Ms. Nealon, the vocational counselor, failed to disclose to the prospective employers the work restrictions placed upon him by Dr. Petro. Again, we must disagree with Claimant in this regard. As indicated above, we have previously imposed a duty upon employers/vocational counselors of informing prospective employers of a claimant's actual physical limitations. *Brown; Young.* However, neither *Brown* nor *Young* considered the ramifications of the Americans with Disabilities Act of 1990(ADA),[17] which became effective July 26, 1992, on this duty.[18] The ADA was enacted to prevent discrimination against qualified individuals with disabilities. Section 12112 of the ADA specifically prohibits employer from engaging in discrimination in "the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112.

In order to comport with the requirements of the ADA in situations such as the one presently before this Court, Employ-

---

**16.** Rather, in *Delaware Valley Truck Parts,* we explained that a prospective employer need only be informed of those physical restrictions that are relevant to the duties of the proffered job.

**17.** 42 U.S.C. §§ 12101–12213.

**18.** The decision in *Young* was rendered prior to the effective date of the ADA, whereas the decision in *Brown* was rendered shortly thereafter, in September of 1992.

ers and vocational counselors have adapted their policies and procedures so as to request that claimants sign an ADA waiver prior to releasing pertinent medical information to prospective employers. Admittedly, Ms. Nealon did not inform prospective employers of Claimant's limitations. However, Claimant's own actions prohibited Ms. Nealon from providing this information. More specifically, Ms. Nealon indicated that she normally requests ADA waivers at vocational interviews. However, in this case, Claimant's original counsel repeatedly refused Ms. Nealon's request for an interview and she was unable to meet with Claimant, let alone obtain an ADA waiver. Thus, under the provisions of the ADA, Ms. Nealon was essentially prohibited from discussing Claimant's physical limitations with prospective employers and any argument by Claimant that such failure rendered the proffered jobs unavailable is somewhat disingenuous.

■ Finally, Claimant argues that the WCJ and the Board erred as matter of law in concluding that he acted in bad faith at each of the job interviews. In this regard, we agree with Claimant.

The allegations of bad faith related to Claimant's conduct at the proffered job interviews. Specifically, such allegations included asking to stand for an interview due to his physical problems, requesting a desired a wage of $15.00–$16.00 per hour when the positions paid only approximately half that amount, informing a prospective employer about his medical condition and a previous DUI on his driving record

and informing a prospective employer that he could not perform the position in a sitting fashion. We fail to see how any of this conduct on Claimant's part is sufficient to constitute bad faith.

Employer was well aware of Claimant's physical condition and limitations. Claimant routinely visited with Dr. Petro, Employer's staff physician/plant medical director. Employer was aware that Claimant had undergone two surgeries on his back and was considering a third due to increased instability in his lower back area. Claimant's actions in asking to stand for an interview and in describing his physical limitations, all of which were related to his work injury,[19] were consistent with his ongoing medical condition and Dr. Petro's observations.[20] The record lacks evidence that Claimant exaggerated his condition. To the contrary, upon review of the evidence of record, it appears as though Claimant was merely being truthful regarding his abilities.

■ Additionally, the evidence of record indicates that Claimant was being truthful regarding his previous DUI. The interview at which Claimant disclosed this DUI related to a position driving a senior citizens bus. Hence, any prior DUI's or other traffic-related offenses on an applicant's driving record were extremely relevant to the potential employer. Moreover, regarding his desired wage, Claimant merely indicated on two employment applications that he desired $15.00–$16.00 per hour, his

---

19. A claimant acts in bad faith when he divulges information to a prospective employer regarding non-work-related physical restrictions. *Munroe v. Workmen's Compensation Appeal Board (H & G Distributing Company)*, 151 Pa.Cmwlth.465, 617 A.2d 88 (1992), *petition for allowance of appeal denied*, 536 Pa. 634, 637 A.2d 294 (1993).

20. In his deposition testimony, Dr. Petro described his definition of "sedentary work," which he concluded that Claimant was capable of performing. (R.R. at 186a). Specifically, Dr. Petro indicated that such work included no "physical exertion either in lifting, pushing, or pulling beyond ten pounds" and an "opportunity to make frequent changes of position as necessary." *Id.*

previous wage with Employer. The record lacks evidence that Claimant was demanding this wage, that he was unwilling to accept a lower wage or that he was aware of the salaries at these two positions. In sum, Claimant attended interviews at each of the five positions proffered by Employer and it appears from the evidence of record that he truthfully described his physical condition and limitations.[21]

Accordingly, the order of the Board is reversed.

### ORDER

AND NOW, this *12th* day of *November,* 2002, the order of the Workers' Compensation Appeal Board is hereby reversed.

**21.** As noted above, the prospective employers were not aware of Claimant's limitations as Ms. Nealon was prohibited from disclosing the same.