Sean BROBST, Petitioner,

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (SCHUYLKILL
PRODUCTS, INC.), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 21, 2003.
Decided May 23, 2003.

Andrew J. Primerano, Hazleton, for petitioner.

Karen L. Domalakes, Frackville, for respondent.

BEFORE: COLINS, President Judge, and FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Sean Brobst (Claimant) petitions for review of the November 12, 2002, order of the Workers' Compensation Appeal Board (WCAB), which affirmed the decision of the workers' compensation judge (WCJ) to grant Claimant's claim petition but to suspend Claimant's wage loss benefits for refusing to perform an available job. We affirm.

Claimant began working as a laborer for Schuylkill Products, Inc. (Employer) in September of 1994. On December 17, 1996, while Claimant was attempting to position a large metal "A" frame with a crowbar, Claimant lost his grip on the crowbar and fell on his right hand, arm and shoulder. Claimant notified his supervisors and completed his shift. The next day, Claimant saw the company's medical provider for pain in his hand, arm, shoulder and neck. (WCJ's Findings of Fact, Nos. 4–6.)

Claimant returned to work on December 19, 1996, and was assigned a light duty job in the tool room. The tool room is a small concrete building with steel bars on the windows and a steel door that can only be locked and unlocked from the outside. As a joke, Claimant's co-workers would lock him in the tool room. Each time, Claimant used the phone in the tool room to call the watchman to let him out. Claimant worked in the tool room for three days but did not return to work after December 21, 1996. (WCJ's Findings of Fact, Nos. 8, 11, 13.)

On May 29, 1997, Claimant filed a claim petition, alleging that he suffered a disabling work injury on December 17, 1996. Employer filed an answer to the petition, admitting that Claimant reported an injury on that date but denying that Claimant was disabled as a result. (WCJ's Findings of Fact, No. 1.) The matter was assigned to the WCJ, who held hearings on the matter.

At the hearings, Claimant testified on his own behalf and offered the deposition testimony of Terence F. Duffy, M.D., board-certified in internal medicine and in physical medicine and rehabilitation. Dr. Duffy, who began treating Claimant on May 12, 1997, testified that Claimant's work injury caused Claimant to suffer from brachial plexitis in the right upper extremity, reflex sympathetic dystrophy (RSD) in the right upper extremity and probable right carpal tunnel syndrome. Dr. Duffy opined that Claimant cannot perform his pre-injury job, the tool room job or any other type of work because of pain in his right upper extremity. Dr. Duffy also indicated that Claimant had psychological problems resulting from his chronic pain and RSD. (WCJ's Findings of Fact, Nos. 27–28.)

Claimant also offered the deposition testimony of Stefan P. Kruszewski, M.D., board-certified in psychiatry, forensic medical examination, chronic pain management, addiction medicine and medical management. Dr. Kruszewski, who began treating Claimant on November 21, 1997, and who saw Claimant on three occasions, testified that Claimant suffers from chronic post-traumatic stress disorder, pain disorder, major depression with melancholia and a history of adjustment disorder with mixed emotional features. Dr. Kruszewski opined that Claimant's psychological conditions were caused by a combination of Claimant's work injury and being locked in the tool room by his co-workers. Dr. Kruszewski also indicated that Claimant cannot perform the tool room job because of his psychological injury, but he could work for another employer. (WCJ's Findings of Fact, Nos. 31–32.)

In opposition to the claim petition, Employer presented the testimony of Joseph A. Vuksta, a laborer who no longer works for Employer but who worked with Claimant on December 17, 1996. Vuksta testified that Claimant was upset that they would be working over the Christmas holiday with very little time off. Claimant told Vuksta during lunch that he would do whatever he had to do to get off the shift. Vuksta also testified that he was not part of the group that locked Claimant in the tool room but that it was good clean fun and was not personal to Claimant. (WCJ's Findings of Fact, Nos. 35–38.)

Employer also offered the testimony of Albert J.E. Matunis, a Working Gang Boss who worked with Claimant on December 17, 1996. Matunis testified that he opened the lock to let Claimant out of the tool room on December 19, 1996, but Claimant did not complain and acknowledged it as a joke.[1] Matunis stated that horseplay occurred constantly at Employer's place of business, and he was sure that Claimant had been involved in such activity prior to December of 1996. (WCJ's Findings of Fact, Nos. 39, 41–43.)

Employer also offered the testimony of George F. Litsch, the Plant Manager. Litsch testified that he assigned Claimant to the tool room and told him to do whatever he could, even if Claimant had to just sit in a chair for the shift. Claimant's job simply was to make sure people were accountable for the tools by signing them out. When Litsch was informed that Claimant did not return to work after December 21, 1996, Litsch called Claimant's house and spoke with his wife. Litsch left a message to have Claimant call him, but Claimant did not return the call. Litsch called again on December 27, December 30 and January 11 and left messages on Claimant's answering machine, but Claimant did not return the calls.[2] Litsch testified that the tool room job is still available to Claimant.[3] (WCJ's Findings of Fact, Nos. 52–55, 59, 62.)

---

1. Employer also offered the testimony of Joseph J. Wylota, a Working Gang Boss who worked with Claimant on December 19, 1996. Wylota testified that Claimant did not complain to him about being locked in the tool room. (WCJ's Findings of Fact, Nos. 44–45.) Employer also offered the testimony of Theodore C. Eister, who worked in Quality Assurance. Eister testified that, on one occasion, he unlocked the tool room for Claimant, and Claimant said only that the other guys were "screwing around." (WCJ's Findings of Fact, Nos. 50–51.)

2. Employer also presented the deposition testimony of Linda A. Swoyer, Human Resources Administrator. Swoyer testified that she phoned Claimant's home and left messages on January 6, January 8, January 9, January 10 and January 11, but no one returned the calls. (WCJ's Findings of Fact, Nos. 63, 65.)

3. Swoyer testified that Claimant did not respond to various correspondences indicating to Claimant that light-duty work was available. (WCJ's Findings of Fact, No. 65.)

As for medical evidence, Employer offered the deposition testimony of Richard A. Close, M.D., a board-certified neurosurgeon who examined Claimant on October 10, 1997. Dr. Close described Claimant's work injury as a sprain of his right shoulder, neck and low back and bilateral RSD, worse on the right. Dr. Close opined that Claimant is capable of performing sedentary work under restrictions, is capable of performing the tool room job and was capable of doing so in December of 1996. Concerning treatment for Claimant's RSD, Dr. Close recommended that Claimant try to use his arm as much as possible but also that Claimant undergo surgery to relieve his symptoms. (WCJ's Findings of Fact, Nos. 66–68; WCJ's Findings of Fact (Remand), No. 3; R.R. at 180a–82a.)

Employer also offered the deposition testimony of Gladys S. Fenichel, M.D., a board-certified psychiatrist who examined Claimant on June 15, 1998. Dr. Fenichel testified that Claimant suffers from a major depressive disorder and chronic pain, but not post-traumatic stress disorder. Dr. Fenichel opined that Claimant is not disabled by the depression or the pain and that Claimant could perform the tool room job from a psychological perspective. (WCJ's Findings of Fact, Nos. 70–71.)

After considering the evidence, the WCJ found that: (1) Claimant's work injury includes a sprain of his right shoulder and neck and bilateral RSD, worse on the right; (2) Claimant suffers from major depression as a result of his work-related RSD; (3) the tool room job required that Claimant sit in a chair in the tool room to ensure that people sign out their tools; and (4) Claimant is capable of performing the tool room job.[4] Based on these findings, the WCJ concluded that Claimant proved a work injury but that Employer was not liable for wage loss benefits.

Claimant appealed to the WCAB, which remanded to the WCJ for consideration of Dr. Close's testimony that, although Claimant can perform the tool room job, Claimant would have pain while doing so. On remand, the WCJ found that: (1) Claimant's testimony regarding the level of his pain is not credible; (2) credible witnesses testified that Claimant never

4. In making these findings, the WCJ made the following credibility determinations. The WCJ believed Claimant regarding the occurrence of the injury and his psychological symptoms; however, the WCJ disbelieved Claimant regarding the extent of his disability, the duties of the tool room job and that the cause of his psychological problem was being locked in the tool room. (WCJ's Findings of Fact, No. 3.) The WCJ believed the testimony of Dr. Duffy that Claimant's work injury includes RSD in the right upper extremity, that Claimant cannot perform his pre-injury job and that Claimant's psychological problems result from his physical injury; however, the WCJ did not believe Dr. Duffy's testimony that Claimant's work injury includes brachial plexitis and right carpal tunnel syndrome and that Claimant cannot perform the tool room job or any other type of work. (WCJ's Findings of Fact, Nos. 29–30.) The WCJ believed the testimony of Dr. Kruszewski that Claimant's injury includes major depression and that Claimant's psychological problems were caused, at least in part, by his physical injury of RSD; however, the WCJ did not believe Dr. Kruszewski's view that Claimant's work injury includes post-traumatic stress disorder from being locked in the tool room and that Claimant cannot perform the tool room job because of his psychological problems. (WCJ's Findings of Fact, Nos. 33–34.)

As for Employer's witnesses, the WCJ believed the testimony of Vuksta, Matunis, Wylota, Eister, Litsch and Swoyer. (WCJ's Findings of Fact, Nos. 35, 39, 44, 50, 52, 63.) The WCJ also believed the testimony of Dr. Close, except Dr. Close's opinion that Claimant's work injury includes an injury to Claimant's low back. (WCJ's Findings of Fact, No. 69.) The WCJ believed the testimony of Dr. Fenichel, except her view that there is no causal connection between Claimant's depression and his work injury. (WCJ's Findings of Fact, No. 72.)

mentioned any difficulty with the tool room job because of pain; (3) Claimant himself testified that he left the tool room job because of the horseplay, not because of pain; (4) Dr. Close testified that he would not expect Claimant's pain to lessen at the tool room job but that Claimant's pain could increase with fatigue; and (5) Dr. Close did *not* testify that performing the tool room job duties would increase Claimant's pain. (WCJ's Findings of Fact (Remand), Nos. 2–4.) The WCJ determined again that Employer was not liable for wage loss benefits. Claimant appealed to the WCAB, which affirmed. Claimant now appeals to this court.[5]

Claimant argues that the WCAB erred in affirming the WCJ's finding that Claimant was capable of performing the tool room job. Claimant contends that, under *Chavis v. Workmen's Compensation Appeal Board (Port Authority of Allegheny County)*, 142 Pa.Cmwlth. 445, 598 A.2d 97 (1991), *appeal denied*, 530 Pa. 661, 609 A.2d 169 (1992), a claimant is incapable of performing a job where the claimant cannot perform the job duties without incurring chronic pain.

In *Chavis*, the medical expert testified that, physically, the claimant could perform the jobs offered to him, but performing the job duties would cause him pain. The referee found, based on this testimony, that the claimant could perform the job duties in question. *Id.* However, this court held that medical evidence which establishes that a claimant cannot perform job duties for any appreciable duration or without incurring chronic pain does not constitute substantial evidence to support a finding that the claimant can perform the job duties.[6] *Id.*

■ Here, Dr. Close testified on cross-examination as follows:

Q. Now, you indicated [Claimant] could go back to the [tool room] job.... He wouldn't go back to that job without pain, would he?

A. He would not, no.

Q. And for somebody in [Claimant's] condition just being at that site for eight hours could increase the pain?

A. Well, I think any activity, be it sedentary—but I wouldn't expect his pain to lessen at the job.

Q. But it could increase also?

A. I think it could easily increase with fatigue.

(R.R. at 188a–89a.)

■ Essentially, then, Dr. Close testified that Claimant would experience pain from RSD whether or not he sat in a chair in the tool room to ensure that people signed out their tools. Thus, this is not a case like *Chavis* where Claimant could avoid pain from RSD by *not* performing certain job duties. Claimant will suffer pain from RSD whether or not he performs the tool room job. Moreover, the evidence establishes that Claimant's pain

---

5. Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002).

6. In *Crowell v. Workmen's Compensation Appeal Board (Johnson Dairy Farm)*, 665 A.2d 30 (Pa.Cmwlth.1995), a similar case, the medical expert testified that the claimant could physically perform the job duties of a farm hand, but doing so would cause him pain. *Id.* This court held that medical evidence which establishes that the claimant would be subject to pain if he returned to his previous occupation does not constitute substantial evidence to support a finding that the claimant can perform his prior job duties. *Id.*

is not so great that it would disable him from performing the tool room job, even if his pain were to increase with fatigue.[7]

 Claimant next contends that the WCJ failed to give adequate reasons for accepting Dr. Close's testimony over that of Dr. Duffy regarding Claimant's ability to perform the tool room job.[8] We disagree. The WCJ stated that Dr. Close's opinion was: (1) logical and internally consistent; (2) supported by his findings on examination, testing and Claimant's credible complaints about RSD; and (3) consistent with his opinion that Claimant should use his arm as much as possible. (WCJ's Findings of Fact, No. 68.)

 Claimant also argues that the WCJ failed to give adequate reasons for rejecting Dr. Close's testimony that Claimant sustained a low back injury. We disagree. The WCJ explained that the records do not support any complaints of low back pain until September 15, 1997, a substantial period of time after the work injury. (WCJ's Findings of Fact, No. 69.)

 Finally, Claimant argues that the WCJ failed to address Dr. Close's testimony that Claimant suffered from work-related carpal tunnel syndrome. However, Dr. Close did not testify that Claimant's December 17, 1996, work injury includes carpal tunnel syndrome. Dr. Close testified that Claimant's carpal tunnel syndrome

was diagnosed two years prior to the work injury. (R.R. at 172a.)

Accordingly, we affirm.

## ORDER

AND NOW, this 23rd day of May, 2003, the order of the Workers' Compensation Appeal Board, dated November 12, 2002, is hereby affirmed.

---

7. Claimant argues that the WCJ's finding that Claimant's pain is not disabling is not supported by substantial evidence. We disagree. The finding is supported by the testimony of Dr. Close, who, being aware of Claimant's pain and that it could increase with fatigue, opined that Claimant is capable of performing the tool room job. The finding is also supported by the testimony of credible witnesses who stated that Claimant never complained about pain while performing the tool room job for three days.

8. We note that section 422(a) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834, does not require that a WCJ give "adequate reasons" for rejecting testimony but, rather, that a WCJ give an explanation of the reasons for rejecting testimony. *PEC Contracting Engineers v. Workers' Compensation Appeal Board (Hutchison)*, 717 A.2d 1086 (Pa.Cmwlth.1998). The purpose of this requirement is to ensure that a legally erroneous basis for a finding will not lie undiscovered and to allow meaningful appellate review of possible legal error. *Id.*