# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Soose,                           :
                    Petitioner          :
                                        :
            v.                          :   No. 549 C.D. 2014
                                        :   SUBMITTED:  November 26, 2014
Workers' Compensation Appeal            :
Board (PSC Metals, Inc.),               :
                    Respondent          :


BEFORE:     HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
JUDGE LEADBETTER                        FILED:  August 6, 2015


        Claimant Robert Soose petitions for review of the order of the Workers' Compensation Appeal Board (Board), affirming the suspension of Claimant's indemnity benefits based upon his employer's offer of an available job within the occupational category for which Claimant had been cleared to work. The issue on appeal is whether the credited evidence regarding the pain Claimant could suffer in the available job precludes a finding that he can actually perform the job.  After review, we affirm.

Claimant sustained a totally disabling work-related right foot fracture in November of 2009.[1] While discussed in more detail below, Claimant has been plagued with foot pain and swelling following the injury. In September of 2010, David Vermeire, MD, an orthopedic surgeon, examined Claimant at the request of his employer, PSC Metals, Inc. (Employer). Following that examination, Dr. Vermeire concluded that Claimant could perform the job of Mechanical Gas Cutter Operator, a job available with Employer; the job is a full-time, light duty position, which requires the operator to sit in a booth (cab) to operate a mechanical torch with hand controls. The operator can sit and stand as needed and leave the booth or cab to move about on the outside platform. While the machine operator is normally required to wear steel-toed boots, Employer approved the use of a lighter composite boot and offered to provide one boot in a slightly larger size to enable Claimant to more easily take the shoe on and off and to accommodate swelling of his foot.

Employer sent Claimant a Notice of Ability to Return to Work and offered him the aforesaid job by letter dated February 7, 2011. Claimant did not respond to the job offer, which led Employer to file its suspension petition. In his answer to the petition, Claimant denied that he could perform the job and averred that his treating physician had not released him to perform the position.

The matter was eventually litigated before the workers' compensation judge (WCJ), who resolved the petition in Employer's favor. In addition to describing his pain and discomfort, Claimant testified regarding the various reasons that he believed the job was unsuitable, including his chronic pain,

---

[1] The injury occurred when a piece of steel weighing 1,500 to 2,000 pounds fell on the arch of Claimant's foot, fracturing multiple bones in the mid-foot and damaging various soft tissues.

2

inability to walk to the job site, navigate through the jobsite, climb the steps to access the area where he would work, sit for six to eight hours, and wear the required footwear.[2]

Dr. Vermeire, who testified on behalf of Employer, opined that Claimant could not return to his time-of-injury position because it required standing for long periods of time on uneven surfaces. The doctor noted that Claimant walks with a slight antalgic limp and that his feet were mildly swollen upon examination. The doctor agreed that prolonged standing or activity would tend to increase the swelling in Claimant's foot. According to Dr. Vermeire, however, Claimant could perform light-duty work that involved limited amounts of standing and walking. Dr. Vermeire specifically opined that Claimant could perform the job offered by Employer and that the requirement that he wear protective footwear would not preclude him from performing the job, stating that he didn't "see any problem [with it],"[3] and noting that if Claimant gets a little swelling in his foot, "it might be advisable for him to wear a slightly oversized shoe for that reason." R.R. at 124a (Deposition transcript at 36). The doctor acknowledged on cross-examination that while wearing a shoe would not increase Claimant's swelling, "[i]f the foot became swollen and it was tight in the shoe, it might cause some increased pain." *Id.* at 128a (Deposition transcript at 50).

In opposition, Claimant offered the deposition testimony of his treating physician, Barry Hootman, M.D. According to Dr. Hootman, Claimant

---

[2] According to Claimant, he has constant pain in his right foot, even when sitting, and uses a cane to walk ninety percent of the time because he cannot walk on uneven surfaces or use stairs. He rated his pain as a nine out of ten on a ten-level pain scale, and indicated that he can only stand for fifteen to twenty minutes at a time. Claimant further noted that he cannot wear the boot required to do the job and even finds tennis shoes to be uncomfortable.

[3] Reproduced Record (R.R.) at 124a (Deposition transcript dated August 17, 2011, at 37).

suffers from pain, stiffness, swelling, lack of mobility, limp, difficulty walking on uneven ground, and difficulty with the fit of shoes and getting boots on.[4] The doctor opined that Claimant is unable to perform the available job due to his chronic foot pain and he did not believe that Claimant could tolerate wearing the protective boots. Dr. Hootman testified on direct examination:

> Q. Did you have any comments on any of the findings by Dr. Vermeire or opinions?
>
> A. … The other thing is . . . as far as those work boots that were – they talked about, sure he can get them on, he's not going to do himself any damage. But, boy they're going to hurt.
>     . . . .
> Q. In your opinion, would Mr. Soose be able to wear [the composite] boot on an eight-hour day, five days a week?
>
> A. Again, I can't measure his pain, but I sure think anything that's stiff enough to satisfy work requirements, whether it [is] steel[-]toed or not, is going to be awfully uncomfortable. Like I said, he's even uncomfortable in tennis shoes, which is [sic] a lot more comfortable than something like this.
>     Again, he wouldn't do himself any harm by putting this on and wearing it eight hours a day, five days a week. He's not going to do himself any damage. His foot's going to –his foot swells towards the end of the day, so he has to be careful with sizing and things like that. But he's not going to do himself any damage. He's not going to break anything or do any tendon damage or nerve damage by wearing any kind of boot, any kind of shoe.

R.R. at 257a (Deposition testimony at 24-25).

---

[4] According to Dr. Hootman, tennis shoes are usually the most comfortable footwear for patients with injuries similar to Claimant's because they are light-weight, have an elevated heel and allow for swelling. Apparently, the composite boot is still a stiffly-made boot.

Crediting Dr. Vermeire and Employer's witnesses,[5] the WCJ found in pertinent part:

> [T]he job duties of the mechanical gas cutter operator job [the job] were within the claimant's work related physical restrictions as testified to by Dr. Vermeire and that although the claimant may have some pain and swelling in his foot, there is no medical or orthopedic reason why the claimant should not be able to perform the work on a sustained basis of eight hours a day, five days a week. . . . [I] specifically reject the testimony of the claimant as he appeared at the hearings using a cane while the investigative reports and video did not show the claimant using a cane. Additionally, I accept, in part, the testimony of Dr. Hootman [claimant's treating physician], that although the claimant's wearing of a composite boot may cause pain, it would not cause any orthopedic harm or worsening of the claimant's orthopedic condition as he was disabling the claimant from work based on the claimant's subjective complaints of pain. I do not dispute that the claimant has pain complaints and objective findings of stiffness, swelling and lack of mobility as testified to by Dr. Hootman but I find that these subjective and objective complaints and findings would not prevent the claimant from performing the [job] as testified to by Dr. Vermeire which is essentially a sedentary job allowing the claimant to stand, walk or sit at his discretion.

---

[5] In addition to the medical opinions, the credited testimony of Jason Ludock, a yard manager for Employer, addressed many of Claimant's objections to the job. Specifically, Ludock noted that there would be sufficient lighting for Claimant to see where he was walking in the yard, Claimant could stand or sit as desired, there would be a minimum number of stairs to climb, a radio would be provided for Claimant to use when assistance of a co-worker was required (thereby minimizing additional walking) and the areas where Claimant would walk would be kept free of debris.

WCJ's Decision, Finding of Fact No. 19 (June 21, 2012). Accordingly, concluding that the available job fell within Claimant's restrictions, the WCJ suspended Claimant's benefits. The Board affirmed.

On appeal, Claimant essentially argues that the Board committed legal error in suspending his benefits based upon the availability of the offered job because the credited evidence establishes both that he continues to suffer chronic foot pain and swelling from the work injury and that performance of the job will increase his pain. Claimant further argues that *Brobst v. Workers' Compensation Appeal Board (Schuylkill Products, Inc.)*, 824 A.2d 411 (Pa. Cmwlth. 2003), relied upon by the Board (and Employer) as controlling, is distinguishable, and that application of the holdings in *Chavis v. Workmen's Compensation Appeal Board (Port Authority of Allegheny County)*, 598 A.2d 97 (Pa. Cmwlth. 1991) and *Crowell v. Workmen's Compensation Appeal Board (Johnson Dairy Farm)*, 665 A.2d 30 (Pa. Cmwlth. 1995), command the conclusion that the offered job was not available.

Claimant also suggests that the suspension of his benefits based upon the offered job is inconsistent with the WCJ's finding that the job could cause "intolerable" pain. Specifically, Claimant argues:

> [T]he WCJ also accepted as credible and undisputed that Mr. Soose would experience pain, in some cases "intolerable" if he were to do the job on a full duty basis. In this regard, the WCJ specifically accepted as credible and found as fact and the Board affirmed that both Dr. Vermeire and Dr. Hootman believed that performing the job would cause Mr. Soose pain and swelling. Moreover, the WCJ accepted and the Board affirmed both the Claimant's testimony and Dr. Hootman's opinion that the job would cause pain stating as follows: "I do not dispute that Claimant has pain complaints and objective findings

6

> of stiffness, swelling and lack of mobility as testified to
> by Dr. Hootman . . . ."

Petitioner's Amended Brief at 36.

There is no dispute that an employer may modify a claimant's benefits by offering an available job that meets a claimant's physical restrictions. *See generally Kachinski v. Workmen's Comp. Appeal Bd. (Vepco Constr. Co.)*, 532 A.2d 374 (Pa. 1987); *Finley v. Workers' Comp. Appeal Bd. (USX Corp.)*, 811 A.2d 1081 (Pa. Cmwlth. 2002). The fact that a work injury still causes a claimant pain or discomfort does not preclude a suspension of benefits if the injury is not totally disabling and suitable work within the claimant's restrictions is available. *See generally Brobst.* We begin our analysis with a short review of *Chavis*, *Crowell* and *Brobst*.

In *Chavis*, like the present case, the employer sought to modify the benefits of its disabled employee based upon the availability of six different light duty positions. Based upon the claimant's physician's credited testimony that the claimant could physically perform each of the jobs, the referee modified benefits and the Board affirmed.[6] This court reversed on appeal, noting that the treating physician had unequivocally stated that performance of the referenced jobs would cause the claimant pain. Because the evidence demonstrated that the claimant "could not perform the duties of those positions for any appreciable duration or without incurring chronic pain," we concluded that the claimant's disability continued. 598 A.2d at 100-01.

Subsequently, in *Crowell*, the claimant sustained a disabling work-related foot injury while working as a farm hand. The claimant sought a

---

[6] WCJs were formerly known as referees.

7

reinstatement of benefits when he was laid off from a light duty position with another employer. The claimant's treating physician, the only medical expert to testify, stated that he approved the claimant's return to light duty work and that although the claimant could physically perform his previous duties of a farm hand, the performance of those duties would not only cause significant pain, but the lifting involved in that position could cause the claimant to fall, injuring himself or others. Because the doctor had opined that the claimant could perform his prior duties, the WCJ denied the reinstatement petition. Noting that the WCJ found that the claimant would incur pain if he returned to his time-of-injury job, we concluded that the claimant remained disabled, stating "we believe it is inherently unfair and contrary to the humanitarian purpose underlying the Workers' Compensation Act[7] to force any claimant to choose between receiving no benefits at all and returning to the work force under conditions which will cause him continuing pain and may potentially cause him further injury." 665 A.2d at 33 [citing for support *Chavis* and *Farquhar v. Workmen's Comp. Appeal Bd. (Corning Glass Works)*, 528 A.2d 580 (Pa. 1987) (holding that, claimant entitled to benefits even though she could perform time-of-injury job and was symptom free because continued employment would place her at risk of serious injury from blood clot caused by original work injury)].

Finally, in *Brobst*, this court affirmed the suspension of benefits based upon the availability of a light-duty, sedentary job, which involved sitting in a tool room to ensure workers signed-out needed tools. There, the credited medical evidence demonstrated that the claimant, whose work injury included reflex sympathetic dystrophy (RSD), had chronic pain, would experience pain whether or

---

[7] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1 – 1041.4, 2501 – 2708.

8

not he performed the light-duty, sedentary job and that, although his pain could increase with fatigue, the doctor opined that he was still capable of performing the tool room job. In concluding that the job was available, we stated: "[T]his is not a case like *Chavis* where Claimant could avoid pain from RSD by *not* performing certain job duties. Claimant will suffer pain from RSD whether or not he performs the tool room job. Moreover, *the evidence establishes that Claimant's pain is not so great that it would disable him from performing the tool room job, even if his pain were to increase with fatigue.*" 824 A.2d at 415-16 (emphasis in original and added, footnote omitted).

After a review of the credited evidence and the above case law, we conclude that substantial evidence supports the conclusion that the proffered job constituted available work within Claimant's restrictions. Although Claimant continues to suffer pain, discomfort and limitations from his work injury, it is clear that the WCJ did not find the injury as disabling or limiting as Claimant described, and similar to the facts in *Brobst*, there is credited medical evidence that the job fits within Claimant's medical restrictions. Moreover, as in *Brobst*, the credited medical evidence as a whole establishes that the available job will *not* cause a *disabling increase* in Claimant's pain, nor cause any risk of further harm. While the WCJ accepted the treating physician's opinion that the composite boot *may* cause pain, the WCJ did not accept that doctor's opinion that Claimant's pain was disabling, preventing a return to work, or that Claimant would experience disabling pain if he performed the available Mechanical Gas Cutter Operator job. According to Dr. Hootman, Claimant experiences discomfort with all footwear. Both doctors testified that wearing a slightly larger boot to accommodate swelling would be beneficial. In reaching this conclusion, we obviously reject Claimant's suggestion

9

that the WCJ found that Claimant would experience pain, including intolerable pain, and swelling if Claimant performed the job at issue. A close reading of the credited medical testimony and the WCJ's findings belies this contention. Accordingly, we affirm the decision of the Board.

_____

**BONNIE BRIGANCE LEADBETTER,**
Judge

10

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Robert Soose,                                      :
                            Petitioner             :
                                                   :
            v.                                     :    No. 549 C.D. 2014
                                                   :
Workers' Compensation Appeal                       :
Board (PSC Metals, Inc.),                          :
                            Respondent             :

**O R D E R**


AND NOW, this 6th day of August, 2015, the order of the Workers'
Compensation Appeal Board is hereby AFFIRMED.


_____
**BONNIE BRIGANCE LEADBETTER,**
Judge